## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIKA RENEE RILEY-JACKSON, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 07-CV-0631-MJR |
| CASINO QUEEN, INC., a corporation, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER
### (Denying Doc. 132 Defendant Casino Queen's motion for summary judgment
### as to Plaintiff Chanel Jordan)

**REAGAN, District Judge:**

### I.  Introduction

On September 4, 2007, Chanel Jordan ("Jordan") filed this action against her former employer, Casino Queen, Inc. ("Casino Queen"). Jordan's complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e**, *et seq.* **("Title VII")** and **42 U.S.C. § 1981,** and alleges that the Casino Queen discriminated against her because of her race, African American, throughout her entire employment at the Casino Queen, from approximately November 2001 through January 2007.[1] Specifically, Jordan's complaint asserts two counts against the Casino Queen: (1) that she was subjected to unlawful racial discrimination, harassment and hostile work

---

[1] While not dispositive of any issue raised herein, the Court notes the various dates offered by the parties as Jordan's termination date. In her complaint, Jordan alleges that she was terminated on January 10, 2007. Doc. 325, ¶ 114. The Casino Queen also submits that Jordan was terminated on January 10, (Doc. 132), but in her memorandum in opposition to summary judgment, Jordan states that she was terminated on January 1, 2007 (Doc. 329). In Jordan's deposition, she testified to a third date - that she was terminated on January 7, 2007. Doc. 132-1, Jordan Dep., 28:3-10. Because this is Jordan's sworn testimony, the Court accepts January 7 as the date of termination.

environment in violation of Title VII and (2) that she was deprived of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract "as are enjoyed by white citizens," in violation of § 1981.

Now before the Court is the Casino Queen's motion for summary judgment or, in the alternative, motion to sever, submitted July 2, 2010 (Doc. 132), which is fully briefed and ready for disposition.

## II.     Legal Standard Governing Summary Judgment Motions

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions and affidavits reveal that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. ***Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 698 (7th Cir. 2002)**. The Court is to view the record "in the light most favorable to the non-moving party." ***Dyrek v. Garvey,* 334 F.3d 590 (7th Cir 2003) (citing Fed. R. Civ. P. 56(c))**.

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. ***Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986);** *Salvadori v. Franklin School District,* **293 F.3d 989, 996 (7th Cir. 2002)**. Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. ***Salvadori,* 293 F.3d at 996 (citing *Vukadinovich*, 278 F.3d at 699)**.

## III.     Analysis

Jordan is an African-American female who was employed as a cocktail waitress in the Food and Beverage Department of the Casino Queen from December 2001 to January 7, 2007. Doc. 132-1, Jordan Deposition, 14:5-10. Jordan spent the entirety of her full-time employment in

the Casino Queen's Food and Beverage Department.² *Id.* 14:11-13. The stated reason for her suspension and subsequent termination was "four absences in a four week period and calling off in a pattern." Doc. 329; *see also* Doc. 132-4, Event Report. Jordan claims that these absences were the result of her one- year-old son's asthma. *Id*. 25:11-19. Jordan stated that a white cocktail waitress, Amanda Serrano ("Serrano"), called off in a pattern because she had to tend to a sick child, but she was rehired following a grievance hearing. *Id*. 29:23-30:12. Additionally, Jordan testified that other white waitresses - Bobbie Raford ("Raford") and Yolanda Moore ("Moore") - called off in a pattern and were not fired. *Id*. 26:21- 29:6. She also testified that Nicole Cordevant, another white waitress, "would make her money and leave" without consequence. *Id*. 29:7-12.

Jordan also alleges that other incidents occurred during her tenure which were racially-motivated, including several suspensions and reprimands. She claims that she was written up for walking though the kitchen, but the white waitresses, Raford and Cordevant, were not written up for walking through there. *Id*. 48:8-13. Also, unlike white waitresses, she was written up for unauthorized and extended breaks. *Id*. pp. 56-60. Jordan alleges that she was written up for not signing out at the end of her shift, but "management" signed out for white waitresses, including Moore, Wendy Kay ("Kay")³ and Debbie Donovan ("Donovan"). *Id*. 97:5-98:5. In sum, Jordan contends that white employees were systematically treated more favorably than African-American employees.

The Casino Queen counters that Jordan has failed to produce sufficient evidence to establish a genuine issue of material fact. The Casino Queen contends that Jordan's termination was

---

²Jordan worked briefly for the Casino Queen in 1996 as a bus greeter. It was seasonal work, and she was employed for approximately three months. Doc. 132-1, Jordan Dep., 12:19-23.
³The record shows that Kay was "Asian."

lawful because she had received 16 verbal warnings, 29 written warnings and was suspended 19 times for violating company policy.

### A. § 1981 Claims - Four year statute of limitations

The Casino Queen submits that any claims regarding discriminatory acts that took place more than four years prior to the initial date of the filing of those claims are barred under 42 U.S.C. § 1981. As a result, according to the Casino Queen, all of Jordan's claims for alleged adverse employment actions that occurred prior to July 3, 2004 (four years prior to the filing of the third amended complaint), are barred, including Jordan's alleged suspension.

To borrow a phrase from the comedic duo Bud Abbott and Lou Costello, in this admittedly unwieldy case, it is difficult to know "who's on first." Jordan was one of the original 20 Plaintiffs who filed their complaint on September 4, 2007; she was not added in the July 3, 2008 Third Amended Complaint. The relevant time period for her § 1981 claims begins on September 4, 2003.

Furthermore, irrespective of the relevant statute of limitations, hostile work environment claims that occurred prior to the four-year statute of limitations period are actionable so long as at least one act occurred within the statutory period. ***National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684-85 (7th Cir. 2010) (district court erred in refusing to consider whether conduct taken as a whole create actionable hostile work environment); *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006); *Guzman v. Northern Illinois Gas Co.*, 2009 WL 3762202, at \*3 (N.D. Ill. Nov. 6, 2009) (citing cases applying *Morgan* to §§ 1981, 1983 claims)**. Because both her suspension and

her termination occurred during the limitations period, claims by Jordan that occurred prior to the limitations period are not barred.

### B.     The single-filing rule

The Casino Queen alleges that Jordan's claims must be dismissed as time-barred because she failed to file timely charges with the EEOC encompassing the acts of which she complains. The Casino Queen further contends that Jordan fails to allege any facts that satisfy the requirements of the single-filing rule. Jordan responds that she has more than satisfied the pleading requirements to survive the Casino Queen's motion for summary judgment.

On May 15, 2008, the Court discussed the case law relevant to this issue and ruled on the applicability of the single-filing rule. *See* Doc. 36, Mem. and Order. Stated simply, the Court held that Plaintiffs (and Jordan was a named Plaintiff at that time) can piggyback onto the timely-filed charges of other Plaintiffs under the single-filing rule. That is the law of the case, and the Court sees no need to revisit the matter now. Jordan's claims are reasonably related to and "arise[] out of the same unlawful conduct" as those of Plaintiffs with timely-filed charges. Jordan can piggyback onto the timely-filed charges of other Plaintiffs herein under the single-filing rule.

### C.     McDonnell Douglas Burden-Shifting Model

In order to prevail, a § 1981 plaintiff must prove that she has been the victim of intentional discrimination. A plaintiff may establish a claim under § 1981 either directly or indirectly. ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)**. To establish her claims directly, Jordan must put forth direct or circumstantial evidence raising a genuine issue as to the Casino Queen's discriminatory intent in carrying out the challenged employment actions. ***See id.**; see also Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009).** Jordan must

show either an acknowledgment of discriminatory intent by the Casino Queen or circumstantial evidence that provides the basis for a claim of intentional discrimination. *See Huff v. Uarco, Inc.*, **122 F.3d 374, 380 (7th Cir. 1997)**.

In order to demonstrate a prima facie case of racial discrimination, Jordan must establish the following elements: (1) she belonged to a protected class; (2) she met the Casino Queen's performance expectations; (3) she suffered an adverse employment action; and (4) the Casino Queen treated similarly-situated persons not in the protected class more favorably. *See McDonnell Douglas*, **411 U.S. at 802-03**; *see also Perdomo v. Browner*, **67 F.3d 140, 144 (7th Cir. 1995)**. Once a prima facie case is established, the burden of production shifts to the Casino Queen to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The burden of persuasion remains with Jordan at all times. *See St. Mary's Honor Center v. Hicks*, **509 U.S. 502 (1993)**. If the Casino Queen articulates a nondiscriminatory reason, it has satisfied its burden, and Jordan must then establish that the Casino Queen's reason was pretextual. *Id*.

### 1. Direct Method

Direct evidence of discrimination takes a "smoking gun" form, such as the statement, "I fired you because of your [race]." *Robin v. Espo Engineering Corp*., **200 F.3d 1081, 1088 (7th Cir. 2000)**. Circumstantial evidence falls into three general types: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other conduct or information from which an inference of discriminatory intent might be drawn; 2) that employees similarly situated to the plaintiff other than in the characteristic (here, race) on which an employer is forbidden to base a difference in treatment received systematically better treatment; and 3) evidence that the employer's reason for a difference in treatment is unworthy of belief, a mere

pretext for discrimination. ***Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007) (citing *Hemsworth v. Quotesmith.Com, Inc*., 476 F.3d 487, 491 (7th Cir. 2007))**

Jordan argues that her claims are viable under the direct method because "[t]he testimony of the Defendant's two Human Resources Directors ... regarding the various acts and omissions of the Defendant's General Manager and upper management, constitutes clear and convincing direct evidence." Further, Jordan alleges that the Casino Queen's failure to take corrective action is direct evidence of discrimination.

However, a bald assertion of widespread discrimination against African-American employees is far from sufficient for Jordan's claims to survive a motion for summary judgment. Jordan must point to specific facts in the record that demonstrate a genuine issue of material fact for trial. *See Celotex Corp. v. Catratt*, **477 U.S. 317, 324 (1986) (stating that a summary judgment motion "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'")**. Jordan must show direct evidence of discrimination by the Casino Queen; she cannot merely rest on general claims of discrimination.

As such, the Court finds that the record before it is devoid of any evidence supporting a finding of discrimination under the direct method. Jordan has produced no evidence of an admission by a decision maker that the alleged adverse employment actions were motivated by a discriminatory animus. ***Nagle*, 554 F.3d at 1114**. She has produced no evidence of racial slurs or statements of dislike for a particular race directed at her by the person who made the adverse employment decisions. ***Owens v. Sandee Mfg. Co.* 1994 WL 384031, \*2-3 (N.D.Ill. 1994)**. Stated

another way, there is no "smoking gun" demonstrating discriminatory intent on the part of the Casino Queen as to Jordan, and insufficient circumstantial evidence to support such a finding.

### 2. **Indirect method**

Jordan contends that she meets the requirements set forth in *McDonnell Douglas* to establish a prima facie case of discrimination. No one disputes that Jordan meets the first and third elements because she is a member of a protected class and her termination constitutes an adverse employment action. The issue is whether Jordan could convince a trier of fact that she was meeting the Casino Queen's legitimate expectations and whether the Casino Queen treated similarly-situated persons not in the protected class more favorably. The Court concludes that *even if* Jordan were not meeting the Casino Queen's legitimate employment expectations at the time of her termination, she has produced evidence sufficient to raise an inference that the Casino Queen applied its legitimate employment expectations in a disparate manner.

The Seventh Circuit Court of Appeals considered a similar situation in *Pantoja v. Am. NTN Bearing Mfg. Corp.*, **495 F.3d 840 (7th Cir. 2007)**, where a plaintiff attempted to show that his employer had two different sets of employment expectations, one for Hispanics and the other for non-Hispanics. The Seventh Circuit opined that "[i]n some cases the employer's job expectations themselves may be tainted with discrimination." **495 F.3d at 846.** The Court then cited its earlier decision in *Peele v. Community Mutual Insurance Co.*, **288 F.3d 319 (7th Cir. 2002),** where it explained,

> When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner..., the second and fourth prongs of *McDonnell Douglas* merge - allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *Pantoja,* **495 F.3d at 846 (citing** *Peele***, 288 F.3d at 329-30)**.

8

Although Pantoja failed to produce sufficient evidence to support the idea that his employer's expectations were tailored to race or national origin, **495 F.3d at 847,** the undersigned Judge concludes that Jordan has provided sufficient evidence to stave off summary judgment.

The litany of disparate treatment, as testified to by Jordan, is extensive. As more fully detailed above, Jordan testified that white waitresses - Serrano, Raford and Moore - called off repeatedly, in a pattern, and were not terminated. She also testified that she was written up for failure to sign out at the end of her shift where white waitresses - Moore and Donovan - were routinely signed out by management (supervisor Kelly Carey) without punishment. Jordan stated that she was written up for cleaning ash trays and letting them air dry at the bar, but Kim Turner, a white waitress, did the same thing without punishment. Doc. 132-2, Jordan Dep. 119:18-121:19. While this Court provides only a limited account herein, Jordan produces a lengthy list of write-ups and punishments that she received, while also providing a lengthy list of similar violations that were not accompanied by punishment for white waitresses. Jordan has clearly produced sufficient evidence to establish a prima facie case of discrimination and to shift the burden of production to the Casino Queen to articulate a legitimate, nondiscriminatory reason to justify the action it took. *McDonnell Douglas***, 411 U.S. at 802-03**.

In *Texas Dep't of Cmty.Affairs v. Burdine*, **450 U.S. 248 (1981)**, the United States Supreme Court concluded that "the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." **450 U.S. at 260**. The defendant need not persuade the court that it was actually motivated by the proffered reasons. **450 U.S. at 254 (citing** *Bd. of Trustees v. Sweeney*, **439 U.S. 24, 25 (1978))**. "It is sufficient if the defendant's evidence raises a

genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* The Court then elaborated,

> the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. *Id*.

The Seventh Circuit followed this formula in ***Rush v. McDonald's Corp.*, 966 F.2d 1104 (7th Cir. 1992)**, where it stated that "an employer would be justified in terminating an employee who was absent from work for three days, and who did not give an explanation of the reasons for her absence until she returned." **966 F.2d at 1114.** The Court reasoned that a company has an interest in insuring that each employee meets the employer's production needs, maintains reliability and is prompt. *Id.* **at 1115**. "It seems self-evident that an employer is acting with a 'legitimate, nondiscriminatory reason' in terminating an employee who simply fails to report to work and does not adequately explain his absence." *Id*. *See also Yowell v. United States Postal Service*, **810 F.2d 644 (7th Cir. 1987) (discharge for poor attendance);** *Guy v. Swift & Co.*, **612 F.2d 383 (8th Cir. 1980) (discharge for insubordination);** *Hamdan v. JK Guardian Security Services*, **1994 WL 548229, \*3 (N.D.Ill. 1994) (discharge for violation of a work rule)**.

In this case, the Casino Queen submits that it has provided a sufficient non-discriminatory reason for terminating Jordan, asserting that she "was terminated for violation of Defendant's attendance policy as set [forth] in the applicable CBA between Local #74 and Defendant" (Doc. 132). The grounds for her termination are borne out in a detailed list of employee warning notices, verbal warnings, written warnings, and suspensions for violations of company

10

policy. Doc. 132-4, Event Report. In sum, the Casino Queen has proffered a "legitimate, nondiscriminatory reason" for terminating Jordan.

Under the ***McDonnell Douglas*** burden-shifting analysis, once the defendant has proffered a legitimate, nondiscriminatory reason for its decision, defendant is entitled to summary judgment unless the plaintiff can present sufficient evidence that the employer's proffered reason was not the true reason for the employment decision but was a pretext for discrimination. ***McDonnell Douglas,*** **411 U.S. at 804**; ***Burdine,*** **450 U.S. at 252-53**. As the Supreme Court clarified in ***Burdine***,

> This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. **450 U.S. at 256**.

To establish that the defendant's nondiscriminatory reason for terminating her employment is a pretext meant to hide a discriminatory motive, "a plaintiff must show that (a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." ***E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006) (citing *McDonnell Douglas,* 411 U.S. at 805) (additional citation omitted)**. "To survive summary judgment, however, the plaintiff need only offer evidence that supports an inference that the employer's nondiscriminatory reason for its action was dishonest." ***Id*. (citing *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 726 (7th Cir. 2005); *Weisbrot v. Med. Coll. of Wisconsin,* 79 F.3d 677, 682 (7th Cir. 1996))**. Consequently, summary judgment is only proper "where no rational fact finder could believe that the employer lied about its proffered reasons for the [employment] decision in question." ***Id.* (quoting *Rudin,* 420 F.3d at 726 n. 8 (internal quotations and citations**

**omitted))**.

"[T]o demonstrate pretext under the *McDonnell Douglas* analysis, a plaintiff may put forth evidence that (1) employees outside of the protected class ..., (2) who were involved in acts of comparable seriousness, (3) were nevertheless retained or rehired (while the plaintiff was not)." ***Hiatt v. Rockwell Intern. Corp*., 26 F.3d 761, 770 (7th Cir. 1994) (citations omitted)**.

As with establishing a prima facie case of discrimination, the Seventh Circuit has held that to be similarly situated for purposes of showing pretext, employees must be "directly comparable ... in all material respects." ***Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 751 (7th Cir. 2006)**. In *Burks*, the Court held that the plaintiff was not similarly situated either to an employee who held a different position and performed different job duties or to an employee in the same position who had better job performance ratings and did not have a "comparable set of failings." ***Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003)**.

The Court concludes that this is not the case where no rational fact finder could believe that the employer lied about its proffered reasons. ***See Perdomo v. Browner*, 67 F.3d 140, 144-45 (7th Cir. 1995) (citation omitted) (Pretext means "a lie, specifically a phony reason for some action.")**. The evidence considered in depth above regarding the disparate treatment accorded to Jordan compared with white cocktail waitresses - Serrano, Moore, Raford, Kay and Donovan - is clearly sufficient to meet the standard established in the *Target* case - evidence that supports an inference that the employer's nondiscriminatory reason for its action was dishonest. **460 F.3d at 960**. Based on the foregoing, the Court finds that Jordan has presented sufficient evidence to meet

her burden of establishing pretext. Summary judgment is not warranted on Jordan's claims for racial discrimination

### D. Hostile work environment

A hostile work environment claim falls under the general rubric of harassment at the workplace, which can constitute prohibited discrimination in the terms and conditions of employment. ***Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002).** To demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that her work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." ***Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 755, 787 (1998)). See also *Hilt-Dyson v. Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002).**

The plaintiff then must show that the harassment was based on her membership in a protected class, that the conduct was severe and pervasive and that there is a basis for employer liability. ***Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998); *Cerros*, 288 F.3d at 1045; *Mason v. Southern Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).**

In the case at bar, to prove her claim that the Casino Queen maintained a racially hostile environment, Jordan must show (1) she was subject to unwelcome harassment, (2) the harassment was based on her race, (3) the harassment was sufficiently severe and pervasive to alter the conditions of her environment, and (4) there is basis for employer liability. ***See, e.g., Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998).**

Jordan has offered sufficient evidence to support her claim that the Casino Queen maintained a racially hostile environment. She has put before the Court allegations of harassment

13

based on incidents she observed and complaints she heard from other employees. Although the Seventh Circuit has ruled that the Court may consider the harassment of third parties in hostile work environment claims, *see Dockter v. Rudolf Wolff Futures, Inc.,* **913 F.2d 456, 460 (7th Cir. 1990)**, even disregarding those allegations, it is clear that a reasonable person would have found the environment Jordan described to be hostile or abusive, and that she perceived it to be so. Beyond the evidence discussed above, Jordan offers numerous instances in which she was subject to unwelcome harassment: (1) that she was not given help when "unbearably" busy and was written up, but white cocktail waitresses were "gladly" helped, including their supervisor serving drinks for them; (2) that her supervisor, Carey, made demeaning remarks to her and treated her differently from white cocktail waitresses, including writing her up for having 11 glasses on the floor where a white cocktail waitress had 15 glasses on the floor without being written up; (3) that supervisor, Sheri Gould, telephoned a white cocktail waitress (Peggy Ross) who failed to show up as scheduled for work, but Jordan served a suspension for the same offense; (4) that a white cocktail waitress instead of a black cocktail waitress with seniority would be sent to a "money-making floor"; (5) that she sought extra shifts, but those were given to white cocktail waitresses; (6) that she asked Carey to be assigned to work at a golf tournament, which would be lucrative job, but no black employees worked special events; and (7) that supervisor Monica Bird told her that "every black person she knew basically did drugs or either sold drugs." Jordan Dep., *generally*.

Jordan has alleged a pattern of racial animus sufficient to show that a hostile work environment had been created.

    **E.**  **Severance of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)**

The Casino Queen moves to sever Jordan's claims and those of any Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b).

As the Seventh Circuit Court of Appeals observed in ***Gaffney v. Riverboat Services of Indiana, Inc*., 451 F.3d 424 (7th Cir. 2006)**, the distinction between the Rules 21 and 42(b) is "jurisdictionally significant." **451 F.3d at 442.** The Court explained that severance under Rule 21 creates two (or more) separate, independent actions where previously there was only one, but a Rule 42(b) order of separate trials does not result in the filing of separate cases. ***Id*., n. 18 (citing 4 Moore's Fed. Practice § 21.06 (2005))**. "Instead, it simply leads to two or more separate factual inquiries in the context of a single, properly joined case." ***Id*.**

Under Rule 21, the Court may "at any time, on just terms, add or drop a party" and may also sever any claim against a party. Jordan was one of the original 20 Plaintiffs who filed this action. On August 22, 2008, the undersigned Judge determined that Plaintiffs' allegations of a widely-held policy of discrimination constituted a single transaction for Rule 20(a) purposes, and Plaintiffs' allegations involved the same issues of law and fact. *See* Doc. 47. The Court then found that joinder of Plaintiffs added in the Third Amended Complaint was proper. *Id*. This is the law of the case, and, as the Casino Queen has yet to identify any specific subsequently joined Plaintiff who does not fit under this rubric, its motion to sever pursuant to Rule 21 is not well taken.

Rule 42(b) provides,

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

When weighing the equities to decide whether to order a separate trial, the most important consideration is prejudice. ***Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621 (N.D.Ill. 2000) (citing *Laitram Corp. v. Hewlett-Packard Co.,* 791 F.Supp. 113, 114 (E.D.La. 1992); *Corrigan v. Methodist Hospital,* 160 F.R.D. 55 (E.D.Pa. 1995) (separate trials are not granted absent a showing of "compelling prejudice" in criminal cases, and there is no reason to hold civil cases to a higher standard))**. Prejudice may arise from two possible sources: (1) jury confusion where multiple plaintiffs bring similar claims; and (2) the considerable delay that will result if separate trials are ordered. ***Id*. (citing *Laitram,* 791 F.Supp. at 115-16)**. "The former can be remedied with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury.... [but] [t]he latter cannot be remedied except by denying separate trials." ***Id*. (internal citation omitted)**.

Courts have not been hesitant to litigate multi-plaintiff cases absent severance. In *Alexander v. Fulton County*, **207 F.3d 1303 (11th Cir. 2000) (overruled on other grounds)**, eighteen plaintiffs alleged that the county sheriff and sheriff's department maintained a "policy or custom" of racial discrimination in employment decisions. **207 F.3d at 1313**. Despite the large number of plaintiffs, the court heard all claims at a single trial. The Eleventh Circuit emphasized that the Supreme Court has "instructed the lower courts to employ a liberal approach to permissive joinder of claims *and* parties in the interest of judicial economy." ***Id*. (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.")**. While the Court noted the potential for juror

16

confusion and unfair prejudice, it held that the potential for prejudice was minimized by the core similarities of plaintiffs' claims. *Id*. **at 1325**.

In *Acevedo-Garcia v. Monroig,* **351 F.3d 547 (1st Cir. 2003),** the First Circuit Court of Appeals upheld the district court's decision to sever an 82-plaintiff case into four separate trials. The appellate court noted that the solution was "within the discretion of the trial court" and "a legitimate and feasible means of effectively conducting this unwieldy litigation." *Acevedo-Garcia***, 351 F.3d at 558**. In that case, the defendants claimed that fairness required severance into eighty-two separate trials, but the court found that fairness to the plaintiffs and judicial efficiency acted as a counterbalance to the defendant's claims of prejudice.

This Court will take a similar approach to balancing the equities. It is, however, premature to make any determination on severance since the parties are involved in negotiations and numerous summary judgment motions are pending. Until the ultimate number of plaintiffs and claims that remain for trial is known, the Court will make no decision on severance.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Chanel Jordan (Doc. 132). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 5th day of November, 2010**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**