**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ERIKA RENEE RILEY-JACKSON, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 07-CV-0631-MJR** |
| **CASINO QUEEN, INC., a corporation,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**
**(Denying Doc. 134 Defendant Casino Queen's motion for summary judgment as to Plaintiff LaRonn Arterbridge)**

**REAGAN, District Judge:**

## I. Introduction

On September 4, 2007, LaRonn Arterbridge ("Arterbridge") filed this action against his employer, Casino Queen, Inc. ("Casino Queen"). Arterbridge's complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e,** ***et seq.*** **("Title VII")** and **42 U.S.C. § 1981,** and alleges that the Casino Queen discriminated against him because of his race, African-American, during his employment at the Casino Queen, from February 3, 2001, through the present. This matter now proceeds on Plaintiffs' Fifth Amended Complaint in which Arterbridge asserts two counts against the Casino Queen: (1) that he was subjected to unlawful racial discrimination, harassment and hostile work environment in violation of Title VII (Count 3) and (2) that he was deprived of his right to

the enjoyment of all benefits, privileges, terms and conditions of his employment contract "as are enjoyed by white citizens," in violation of § 1981 (Count 59).

Now before the Court is the Casino Queen's motion for summary judgment or, in the alternative, motion to sever, filed July 2, 2010 (Doc. 134). The motion is fully briefed and ready for disposition.

## II. Legal Standard Governing Summary Judgment Motions

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. ***Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009) (citing FED. R. CIV. P. 56(c)). *Accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).**

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. ***National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).**

When the non-moving party bears the burden of proof, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. ***Reget*, 595 F.3d at 695.** Stated another way, to survive summary judgment, the non-movant must provide evidence

on which the jury or court could find in his favor. ***See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).**

**III. Analysis**

Arterbridge is an African-American male who began his employment with the Casino Queen in 2001 as a wheelchair pusher. He was promoted to barback in July 2001. Laid off in February 2003, Arterbridge was re-hired approximately two months later as a wheelchair pusher. In June 2003, he became a barback again, and, in February 2008, he was promoted to bartender. Arterbridge is still employed with the Casino Queen and is a member of Union Local #74.

Arterbridge's numerous allegations include the following: (1) he should not have been laid off in February 2003, because he had more seniority than the Casino Queen said he had; (2) he was repeatedly written up for unauthorized or lengthy breaks, for leaving early or for calling off where white employees were not written up for the same offenses; (3) a white supervisor spoke to him in a racially derogatory manner and a white supervisor did not discipline a white employee for racially derogatory remarks reported by Arterbridge; (4) a white employee with less seniority and experience than Arterbridge got a bartender position for which Arterbridge had applied; (5) management did not follow its own rules on bidding for shifts, giving white employees preferential treatment over African-Americans with more seniority; and (6) a white security officer wrote him up but did not submit the write-ups to the Human Resources Department ("HR"), just for "racial

hassles."[1] In sum, Arterbridge contends that he was discriminated against because of his race and that white employees were systematically treated more favorably than he was.

Arterbridge complained to an African-American secretary in HR about racial discrimination but did not file a written complaint, stating that he feared he would lose his job. He also complained to his union stewards that he felt he had been discriminated against. On June 15, 2006, Arterbridge filed a charge of discrimination with the EEOC.

The Casino Queen submits that Arterbridge's claims are frivolous and groundless. It contends that Arterbridge has failed to produce sufficient evidence to prevent summary judgment.

**A. <u>The single-filing rule</u>**

The Casino Queen contends that Arterbridge's claims that fall outside the 300-day period between August 19, 2005, and June 15, 2006, are time barred under Title VII. One of the claims Arterbridge raised in his EEOC charge was the failure to promote him from barback to bartender in 2005. Arterbridge Dep. 77:8-11. Neither party provides an exact date on which this event occurred, and the burden is on the Casino Queen to show that the charge addressing the alleged failure to promote did not fall within the 300-day period.

---

[1]The Court notes that the parties did not provide dates for the majority of these events, and the February 2003 lay-off certainly occurred prior to 300 days before Arterbridge's EEOC charge. However, as discussed below, under Supreme Court precedent, this testimony may - if outside the 300-day period - be timely as a continuing violation or may provide evidence of prior acts constituting background evidence in support of Arterbridge's timely filed claims.

Moreover, under the continuing violation theory, Arterbridge may obtain relief for other time-barred acts by linking them to acts which are within the limitations period. ***Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992)**. In ***Selan***, the Seventh Circuit explained that "[f]or purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." ***Id***. The Court discussed three viable continuing violation theories: (1) cases involving hiring or promotion practices where the employer's decision-making process took place over a period of time so that it was difficult to pinpoint the exact day the "violation" occurred; (2) cases in which the employer has an express and open policy that is alleged to be discriminatory; and (3) cases in which the plaintiff charges that the employer has followed a covert practice of discrimination. ***Id*. at 564-65 (citing *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir. 1982))**. Both the first theory and the third - which is sometimes referred to as a "serial violation" or "pattern of ongoing discrimination" - may be applicable to this case. ***See id.* (citations omitted)**.

Lastly, as explained by the Supreme Court in ***Morgan***, this Court may also consider acts prior to August 19, 2005,

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim. ***National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)**.

The Court concludes, on the current record, that Arterbridge's claim of failure to promote is timely and that other acts of discrimination may be considered under the continuing violation theory or may, at a minimum, provide background evidence in support of this claim.

**B. *McDonnell Douglas* Burden-Shifting Model**

In order to prevail, a § 1981 plaintiff must prove that he has been the victim of intentional discrimination. A plaintiff may establish a claim under § 1981 either directly or indirectly. ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)**. To establish his claims directly, Arterbridge must put forth direct or circumstantial evidence raising a genuine issue as to the Casino Queen's discriminatory intent in carrying out the challenged employment actions. ***See id.*; *see also Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009).** Arterbridge must show either an acknowledgment of discriminatory intent by the Casino Queen or circumstantial evidence that provides the basis for a claim of intentional discrimination. ***See Huff v. Uarco, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997)**.

Arterbridge may also establish his claims for racial discrimination indirectly. In order to demonstrate a prima facie case of racial discrimination, Arterbridge must establish the following elements: (1) he belonged to a protected class; (2) he met the Casino Queen's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the Casino Queen treated similarly-situated persons not in the protected class more favorably. ***See McDonnell Douglas*, 411 U.S. at 802-03; *see also Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995)**. Once a prima facie case is established, the burden

of production shifts to the Casino Queen to articulate a legitimate, nondiscriminatory reason for its actions. ***Id.*** The burden of persuasion remains with Arterbridge at all times. ***See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)**. If the Casino Queen articulates a nondiscriminatory reason, it has satisfied its burden, and Arterbridge must then establish that the Casino Queen's reason was pretextual. ***Id***.

**1. <u>Direct Method</u>**

Direct evidence of discrimination takes a "smoking gun" form, such as the statement, "I fired you because of your [race]." ***Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)**. Circumstantial evidence falls into three general types: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other conduct or information from which an inference of discriminatory intent might be drawn; 2) that employees similarly situated to the plaintiff other than in the characteristic (here, race) on which an employer is forbidden to base a difference in treatment received systematically better treatment; and 3) evidence that the employer's reason for a difference in treatment is unworthy of belief, a mere pretext for discrimination. ***Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007) (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)).**

Arterbridge argues that his claims are viable under the direct method because the testimony of the Casino Queen's HR Directors as well as the testimony of its owners and directors constitute clear and convincing direct evidence that Casino Queen operated an "endemic," "pervasive" hostile work environment.

However, a bald assertion of widespread discrimination against African-American employees is far from sufficient for Arterbridge's claims to survive a motion for summary judgment. Arterbridge must point to specific facts in the record that demonstrate a genuine issue of material fact for trial. ***See Celotex Corp. v. Catratt*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e) (stating that a summary judgment motion "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'")**. Arterbridge must show direct evidence of discrimination by the Casino Queen; he cannot merely rest on general claims of discrimination.

As such, the Court finds that the record before it fails to support a finding of discrimination under the direct method. Arterbridge has produced no evidence of an admission by a decision maker that the alleged adverse employment actions were motivated by a discriminatory animus. ***Nagle*, 554 F.3d at 1114**. He has produced no evidence of racial slurs or statements of dislike for a particular race directed at him by the person who made the adverse employment decisions. ***Owens v. Sandee Mfg. Co.* 1994 WL 384031, *2-3 (N.D.Ill. 1994)**. Stated another way, there is no "smoking gun" demonstrating discriminatory intent on the part of the Casino Queen as to Arterbridge, and insufficient circumstantial evidence to support such a finding.

**2. Indirect method**

Arterbridge contends that he meets the requirements set forth in ***McDonnell Douglas*** to establish a claim of racial discrimination indirectly. Only the first element of the analysis - that Arterbridge is a member of a protected class - is undisputed.

The Casino Queen contends that Arterbridge did not meet the Casino Queen's legitimate expectations. It points to the numerous Employee Warning Notices Arterbridge acknowledged receiving for violations of company policy.

Having carefully reviewed testimony in this matter, the Court concludes that *even if* Arterbridge were not meeting the Casino Queen's legitimate employment expectations, he has produced evidence sufficient to raise an inference that the Casino Queen applied its legitimate employment expectations in a disparate manner.

The Seventh Circuit Court of Appeals considered a similar situation in ***Pantoja v. Am. NTN Bearing Mfg. Corp.*****, 495 F.3d 840 (7th Cir. 2007)**, where a plaintiff attempted to show that his employer had two different sets of employment expectations, one for Hispanics and the other for non-Hispanics. The Seventh Circuit opined that "[i]n some cases the employer's job expectations themselves may be tainted with discrimination." **495 F.3d at 846.** The Court then cited its earlier decision in ***Peele v. Community Mutual Insurance Co.*****, 288 F.3d 319 (7th Cir. 2002),** where it explained,

> When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner..., the second and fourth prongs of *McDonnell Douglas* merge - allowing the plaintiff to establish a prima facie case, stave off summary

> judgment for the time being, and proceed to the pretext inquiry. ***Pantoja,* 495 F.3d at 846 (citing *Peele*, 288 F.3d at 329-30)**.

Although Pantoja failed to produce sufficient evidence to support the idea that his employer's expectations were tailored to race or national origin, **495 F.3d at 847,** the undersigned Judge concludes that Arterbridge has provided sufficient evidence to show that the Casino Queen's performance expectations were tailored to race and that the Casino Queen treated similarly-situated persons not in the protected class more favorably.

While the Court provides only a limited account, the litany of discriminatory treatment, as testified to by Arterbridge, is extensive. In addition to the above-cited instances, Arterbridge testified that he was laid off because he did not know his seniority and without that knowledge could not fight for his job - and could not get his union representative to fight for him. Arterbridge Dep. 17:14-22; 19:17-20:19. He testified that white bartenders, such as "Chris" and Kelly Carey, took long breaks, as much as 30 minutes, without getting written up, but he was written up for an unauthorized break in spite of his protests that his supervisor, Monica Bird, had authorized the break. *Id*. 42:20-43:12; 44:8-17. Arterbridge also testified that Carey had a pattern of call-offs similar to his, but that she was never written up for her call-offs. *Id*. 50:12-51:4. Arterbridge stated that he disputed the validity of some of the write-ups in his file but signed others just to get them out of the way or because he feared for his job.

When asked if his supervisor, Roger Coover, had ever discriminated against him, Arterbridge responded that Coover called him "boy" and used the term "y'all" in a

stereotypical, racially derogatory manner - such as, "You know, y'all like fried food." *Id*. 74:19-75:17.

Notably, Arterbridge testified that he was written-up for violations for which Scott Ward, a similarly situated white employee, was not written up. Arterbridge testified that when Scott Ward, a white barback, took extended breaks or came in late, he was not written up, but Arterbridge, also a barback, would be written up for the same offenses. *Id*. 91:2-11. Arterbridge stated that Ward, who had significantly less seniority than he had (one-and-one-half years compared to four years), was promoted to the bartender position for which Arterbridge had applied. *Id*. 78:8-14. When Ward got the job, Arterbridge contacted Keith Benson and Kevin McNatt, his union stewards or representatives, who told him he would have a grievance meeting. *Id*. 83:11-19. But in spite of his repeated requests, Benson and McNatt put him off, and the hearing was never held. *Id*. 85:17-21.[2]

The Court is aware that some of the language of which Arterbridge complains may not have been intended as - or may not be facially - racially derogatory, but too much

---

[2]The Court notes that Arterbridge's answers to the Casino Queen's third supplemental interrogatories indicate that Arterbridge complained to his union steward Keith Benson that he was denied a promotion to bartender in October 2004 (Doc. 134-2). The Court cannot determine on the record before it whether this is an earlier instance of alleged discrimination or whether Arterbridge's deposition testimony is inconsistent with his answer to interrogatories. "The district court should not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue for trial." ***Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001))**. This possible conflict between Arterbridge's testimony and answers goes to the weight of the evidence and may be a matter for impeachment at trial, but it is not a basis for the Court's granting summary judgment, where the Court must believe the evidence of the nonmovant and draw all justifiable inferences in the nonmovant's favor. ***Id*., (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986))**.

depends on the speaker's demeanor and tone for the Court to draw that conclusion. There is, of course, no way in which a supervisor could call an adult African-American "boy" that is not racially derogatory.

Although cursorily disputed by the Casino Queen, the final element of the ***McDonnell Douglas*** analysis - whether Arterbridge suffered an adverse employment action - is clearly met. "The failure to promote is an adverse employment action with respect to discrimination ... claims." ***Volovsek v. Wisconsin Dept. of Agr., Trade and Consumer Protection*, 344 F.3d 680, 687-88 (7th Cir. 2003) (citing *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002))**. Arterbridge testified that he was denied promotion to bartender and that a white employee with less seniority was promoted instead.

In sum, Arterbridge has produced sufficient evidence to establish a prima facie case of discrimination and to shift the burden of production to the Casino Queen to articulate a legitimate, nondiscriminatory reason to justify the action that it took. ***McDonnell Douglas*, 411 U.S. at 802-03**.

In ***Texas Dep't of Cmty.Affairs v. Burdine*, 450 U.S. 248 (1981)**, the United States Supreme Court concluded that "the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." **450 U.S. at 260**. The defendant need not persuade the court that it was actually motivated by the proffered reasons. **450 U.S. at 254 (citing *Bd. of Trustees v. Sweeney*, 439 U.S. 24, 25 (1978))**. "It is sufficient if the

defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. ***Id.*** The Court then elaborated,

> the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. ***Id.***

In this case, the Casino Queen submits that it has provided a sufficient non-discriminatory reason for promoting Ward rather than Arterbridge, asserting that it filled the bartender position while Arterbridge was on medical leave for three months. The Casino Queen relies on Arterbridge's deposition to support this contention, but the Court reads the deposition differently. Arterbridge testified that Ward was hired as a *barback* - not a bartender - while he was on medical leave and that when Arterbridge returned to work, Ward was working as a barback on his shift. His testimony was as follows:

> Q. Tell me what happened.
>
> A. Basically, in that position right there, they -- Kelly Carey, she was a supervisor at the time. And I signed for the position. He asked me, was I going to sign for it, because he knew I had more seniority than him. And we both worked nights as a barback. Me and him both was a barback. And at the time when he hired him, I was in the hospital because of an incident happened to me.
>
> Q. What happened --
>
> A. I got robbed, and I got cut severely, and I was in the hospital for a while. So in that time, they hired him. So they hire him, and he was doing – he was working my shift. And when he was working my shift, like three months later -- on this hand here (indicating) -- I came back like three

months later. And then we introduced -- well, we introduced to each other and everything,...

Q. So at the time he was a barback; right?
A. Yes.
Q. This is before he got the bartender position?
A. Yes.
Q. So he was hired on as a barback while you were out in the hospital?
A. Exactly. *Id.* 78:19-79:15-22.

This testimony does not support a finding that the Casino Queen hired Ward as a bartender instead of Arterbridge because Arterbridge was off work for three months. Rather, when Arterbridge returned to work, Ward was working as a barback, and Ward's promotion to bartender occurred after Arterbridge had returned.

The Casino Queen also raises the question of whether Arterbridge lost his bid for the bartender position because Ward had more seniority. However, the Casino Queen does not point to any evidence to support this contention.

In sum, the Casino Queen has failed to proffer a "legitimate, nondiscriminatory reason" for failing to promote Arterbridge, and the ***McDonnell Douglas*** burden-shifting analysis ends there. Summary judgment is not warranted on Arterbridge's claims for racial discrimination

**D. Hostile work environment**

A hostile work environment claim falls under the general rubric of harassment at the workplace, which can constitute prohibited discrimination in the terms and conditions of employment. ***Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002).** To demonstrate harassment that rises to the level of a statutory violation, the

plaintiff must prove that his work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." ***Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 755, 787 (1998)).** ***See also Hilt-Dyson v. Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002).**

The plaintiff then must show that the harassment was based on his membership in a protected class, that the conduct was severe and pervasive and that there is a basis for employer liability. ***Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998); *Cerros*, 288 F.3d at 1045; *Mason v. Southern Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).**

In the case at bar, to prove his claim that the Casino Queen maintained a racially hostile environment, Arterbridge must show (1) he was subjected to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was sufficiently severe and pervasive to alter the conditions of his environment, and (4) there is basis for employer liability. ***See, e.g., Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).** Arterbridge has offered sufficient evidence to support his claim that the Casino Queen maintained a racially hostile environment.

First, Arterbridge testified to instances of discrimination based on incidents he observed and statements he heard from other employees. ***See Tutman v. WBBM-TV/CBS, Inc.*, 54 F.Supp.2d 817, 826 (N.D.Ill. 1999) (collecting cases) ("[I]t is permissible for a court to consider harassment of third parties in hostile work environment claims)**.

For example, Arterbridge testified that Cyrus Fisher, an African-American, tried to get a barback position but was told that he had to go to school for that, while whites were hired for that position without attending such a school. Arterbridge Dep. 94:6-15. As another example, Arterbridge testified that white bartenders, Scott Ward, Melissa and Chris, would come in late and not be written up, while he and another black bartender, John Barfield, would be written up. *Id*. 108:18-109:4. As a final example, Arterbridge testified that a white individual was hired "off the street" in preference to a black porter named Lloyd who should have gotten the position because of the seniority system then in place. *Id*. 128-131.

Second, even disregarding third-party allegations, it is clear that a reasonable person would have found the environment Arterbridge described to be hostile or abusive, and that he perceived it to be so. Beyond the evidence discussed above, Arterbridge offers other instances in which he was subjected to racial discrimination including (1) that the Casino Queen failed or refused to promote him from his position as a wheelchair pusher to a security position; (2) that white supervisors assigned him to clean out the liquor rooms but Ward, who had less seniority, was assigned better jobs that allowed him to make more tips; and 3) that white employees received preferential shifts and transfers. Arterbridge Dep., *generally*.

In sum, Arterbridge has alleged a pattern of racial animus sufficient to show that a hostile work environment had been created.

**E. Severance of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)**

The Casino Queen moves to sever Arterbridge's claims and those of any Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b).

Rather than rehearse in its entirety the Court's analysis of this issue, the parties are referred to the Court's Memorandum and Order denying the Casino Queen's motion to sever as to Chanel Jordan (Doc. 363), which is equally applicable to the instant matter. For the reasons stated therein, the Court will make no decision on severance as to Arterbridge until such time as the ultimate number of Plaintiffs and claims that remain for trial is known.

**IV. Conclusion**

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Laronn Arterbridge (Doc. 134). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 1st day of December, 2010**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**