IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIKA RENEE RILEY-JACKSON,** et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | )   Case No. 07-CV-0631-MJR ) |
| **CASINO QUEEN, INC.,** a corporation, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**
**Denying Summary Judgment as to Forrest Lee (Doc. 288)**

**REAGAN, District Judge:**

**I.     Introduction**

On October 3, 2008, Plaintiff Forrest Lee, Sr., ("Lee") joined the lawsuit filed in this Court against his former employer, Casino Queen, Inc. (Fourth Amended Complaint). Lee's complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e,** *et seq.* **("Title VII")** and **42 U.S.C. § 1981,** and alleges that the Casino Queen discriminated against him because of his race, African-American, during his employment at the Casino Queen, from June 1993 through September 7, 2006.[1] Specifically, Lee's complaint asserts two counts (Counts 129 and 142) against the Casino Queen:  (1) discrimination in employment based upon race in the form of adverse employment actions,

---

[1]According to Plaintiffs' Fifth Amended Complaint, Lee's employment was terminated in August 2006. Doc. 325, Fifth Am. Comp. ¶ 150. The discrepancy may be explained by the fact that Lee considered himself terminated in August when he failed to go to work, but the Casino Queen did not officially terminate his employment until September.

in violation of Title VII and Section 1981, and (2) racially hostile work environment. Now before the Court is the Casino Queen's summary judgment motion and memorandum, filed September 10, 2010 (Doc. 288), which is fully briefed and ready for disposition.

II.     **Key Facts[2]**

Lee was employed by the Casino Queen from June 1993 to September 2006. He began his employment as a kitchen worker but transferred to the Security Department in October 1993. The stated reason for Lee's termination was job abandonment arising from his failure to call into work and not showing up for his shift after August 31, 2006, in violation of the Casino Queen's stated policies. Lee claims to have overslept and missed his shift. He states that he believed he was automatically terminated because of his "no call/no show." Lee acknowledges that he received a letter six days later, dated September 5, 2006, stating that if he did not contact the Casino Queen, his job would be terminated. Lee has admitted that he knew this letter meant he had not yet lost his job, but he did not contact the Casino Queen after receipt of the letter.

Lee alleges that the Casino Queen terminated his employment in violation of Title VII and § 1981. He further alleges that prior to his termination, he was subjected to racial discrimination in the form of a shift change and various disciplinary write-ups. Lee also claims that during his employment with the Casino Queen, he was subjected to a racially-hostile work environment.

The Casino Queen contends that there was no discriminatory basis for Lee's

---

[2] These undisputed facts plainly appear in the record, in documentary material, or in deposition testimony submitted with parties' memoranda.

termination. It claims that Lee was terminated solely because of job abandonment after his no call/no show. The Casino Queen further contends that Lee was not subjected to racial discrimination during the term of his employment, nor was he subjected to a racially-hostile work environment. It argues that Lee has failed to identify any racially- based allegation of harassment directed at him. The Casino Queen also insists, and Lee admits, that Lee made no complaints of racial discrimination to the Casino Queen's Human Resources Department, though he admits being familiar with the Casino Queen's Guaranteed Fair Treatment process. On these grounds, the Casino Queen asserts that Lee has not presented evidence of discrimination or a racially-hostile work environment.

### III.    Legal Standard Governing Summary Judgment Motions

Under **Federal Rule of Civil Procedure 56**, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Breneisen v. Motorola, Inc.,* **512 F.3d 972 (7th Cir. 2008) (citing** *Celotex Corp. V. Catrett,* **477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold,* **481 F.3d 512, 516 (7th Cir. 2007)).** *Accord Levy v. Minnesota Life Ins. Co.,* **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this Court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co.,* **491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison,* **488 F.3d 756, 764 (7th Cir. 2007).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, **477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002).** Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, **278 F.3d 693, 699 (7th Cir. 2002)**. Nonetheless, a non-moving party may submit excerpts of his own deposition as "affirmative evidence to defeat summary judgment," *Williams v. Seniff*, **342 F.3d 774, 785 (7th Cir. 2003)**, and a plaintiff may present an affidavit relating facts of which he has personal knowledge to support a discrimination claim. *Volovsek v. Wisc. Dep't of Agriculture, Trade and Consumer Protection,* **344 F.3d 680, 690 (7th Cir. 2003).**

IV.  Analysis

   A.  Procedural posture

Lee acknowledges that he has not filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and has not received a Right to Sue Letter.  He claims that his "cause of action is timely filed pursuant to the single-filing doctrine."  Of the approximately 18 named Plaintiffs in this action who have filed Charges of Discrimination with the EEOC, 14 filed charges on June 15, 2006, which is the earliest date of filing (Doc. 54).  Accordingly, for Lee to satisfy the elements of the single-filing doctrine, he must claim an act which contributed to the claim that occurred within the 300–day period between August 19, 2005, and June 15, 2006.

Acts contributing to the claim that occurred outside of the 300-day period

may also be actionable under United States Supreme Court precedent in *National Railroad Passenger Corp. v. Morgan*, **536 U.S. 101 (2002)**. There, the Court held, "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." **536 U.S. at 117, 120-21**. As a result, Lee may obtain relief for other time-barred acts by linking them to acts which are within the limitations period. *Selan v. Kiley*, **969 F.2d 560, 564 (7th Cir. 1992)**.

In *Selan*, the Seventh Circuit explained that "[f]or purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id*. The Court discussed three viable continuing violation theories: (1) cases involving hiring or promotion practices where the employer's decision-making process took place over a period of time so that it was difficult to pinpoint the exact day the "violation" occurred; (2) cases in which the employer has an express and open policy that is alleged to be discriminatory; and (3) cases in which the plaintiff charges that the employer has followed a covert practice of discrimination. *Id.* **at 564-65 (citing** *Stewart v. CPC International, Inc.*, **679 F.2d 117 (7th Cir. 1982))**. The third theory - which is sometimes referred to as a "serial violation" or "pattern of ongoing discrimination" - may be applicable to this case. *See id.* **(citations omitted)**. The Court concludes, on the current record, that Lee's claims of discrimination and hostile work environment may be considered under the continuing violation theory.

Lee's claims brought pursuant to 42 U.S.C. § 1981 are subject to a four-year

statute of limitations. *Jones v. RR. Donnelley & Sons Co.*, **541 U.S. 369, 381-82 (2004);** *Dandy v. United Parcel Serv., Inc.*, **388 F.3d 263, 269 (7th Cir. 2004)**. Although Lee's claims were added in Plaintiffs' Fourth Amended Complaint on October 3, 2008, the Court has determined that all claims herein relate back to the original complaint. *See, e.g.,* Doc. 444. Therefore, Lee's §1981 claims regarding discriminatory acts that allegedly took place prior to September 4, 2003, are barred by the applicable statute of limitations.

### B. Title VII and § 1981 discrimination claims

Title VII prohibits employers from discriminating against employees with respect to the terms and conditions of employment, based on the employees' race, color, religion, sex, or national origin. **42 U.S.C. § 2000e-2(a)(1)**. A Title VII plaintiff may satisfy his burden of proving intentional discrimination in two ways. First, the plaintiff may present direct evidence of the employer's discriminatory intent. Second, the plaintiff may use the indirect, burden-shifting analysis delineated in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802 (1973).**

#### 1. Direct evidence of discrimination

In the case at bar, the Casino Queen contends that Lee presents no direct evidence of discrimination, and his claim should be examined under the *McDonnell Douglas* burden-shifting model. Lee responds that he has presented substantial direct evidence of discrimination.

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v.*

*Lincoln Land Cmty. College*, **420 F.3d 712, 720 (7th Cir. 2005) (citing** *Eiland v. Trinity Hosp.*, **150 F.3d 747, 750 (7th Cir. 1998)).** "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Nagle v. Village of Calumet Park*, **554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting** *Hemsworth v. Quotesmith.com, Inc.*, **476 F.3d 487, 491 (7th Cir. 2007)).**

For direct evidence of discrimination, Lee cites statements made by Cheryl Childress and Betty Smith, Human Resources Directors for the Casino Queen, as well as the testimony of the Casino Queen's owners and board of directors, Charles Bidwill, Tom Rand and James Koman. These statements do not meet the direct evidence showing as an admission by the employer/decisionmaker, or as circumstantial evidence amounting to direct evidence. None of those testifying was Lee's supervisor or made the decision to terminate Lee's employment with the Casino Queen. Consequently, their statements cannot be taken as admissions by a decisionmaker of discriminatory animus. Moreover, their statements cannot fulfill the direct evidence method circumstantially. Even if one concluded that these statements provide circumstantial evidence of discriminatory activity

7

in the Casino Queen, they do not present evidence of discriminatory treatment toward Lee specifically. The statements present no evidence of derogatory racial remarks or statements of dislike for a particular race directed at Lee by the person who made the adverse employment decision. Nor do they provide any evidence that race was a motivating factor behind Lee's termination.

### 2. The *McDonnell Douglas* burden-shifting model

Since Lee presents no direct evidence of discrimination, the Court examines his Title VII claim under the *McDonnell Douglas* burden-shifting model. Under this approach, a plaintiff first must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, Lee must show (1) that he was a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, **254 F.3d 644, 650 (7th Cir. 2001).**

Once the plaintiff has established a prima facie case, a presumption of discrimination arises, and the employer must produce a legitimate, non-discriminatory reason for the employment action. *Traylor v. Brown*, **295 F.3d 783, 788 (7th Cir. 2002).** At this stage, the employer is not required to prove that it was actually motivated by the proffered reason. Rather, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Stockett v. Muncie Indiana Transit System*,

**221 F.3d 997, 1001 (7th Cir. 2000)(quoting** *Texas Department of Community Affairs v. Burdine***, 450 U.S. 248, 257 (1981)).** If the employer satisfies this obligation, the burden of production returns to the plaintiff to demonstrated the pretextual nature of the proffered reason. *Bennett v. Roberts***, 295 F.3d 687, 694 (7th Cir. 2002).**

The first element of Lee's prima facie case for discrimination is not in dispute. The Casino Queen admits that Lee is a member of a protected class. Thus only the second, third, and fourth elements of Lee's prima facie case need be analyzed.

The second element of a prima facie case of discrimination under *McDonnell Douglas* is a showing that the plaintiff was performing his job satisfactorily. The Casino Queen argues that Lee failed to establish that his performance met his employer's legitimate expectations. It submits that Lee was disciplined for a no call/no show, failed to subsequently come to work and was terminated for job abandonment. The Casino Queen also asserts that the Employee Warning Notices Lee received for violation of various company policies during his employment show that his performance did not meet the Casino Queen's legitimate expectations.

Lee contends that he is not required to establish that he was meeting the Casino Queen's legitimate expectations because his claim is against the very people who evaluated his performance, and expectations were applied in a discriminatory manner.

Although the number of warning notices received by Lee during a four-year period does not seem to be excessive, the Court is perplexed by Lee's claim that he was terminated as a result of racial discrimination. When presented with a termination slip

showing that he was terminated on September 7, 2006, Lee responded that he had never seen it before and that he "left in August." Lee Dep. 26:22-27:6. Lee stated that he missed his shift because he overslept. *Id.* 27:11-14. He stated that he assumed that he was terminated because, according to the rule book, no call/no show meant automatic termination. *Id*. 27:11-15. Two or three days later, he received a call from "Danielle," a security person who worked in the office at the Casino Queen, inquiring if he was all right, to which he responded, "I'm fine." *Id*. 27:24-28:2; 28:23-29:4. He did not ask if he was fired and did not talk to anyone at the Casino Queen after that. *Id*. 29:15-23. However, he received a letter, dated September 5, 2006, which stated, "If I do not immediately hear from you, we will consider your prolonged absence as job abandonment, and your employment with the Casino Queen will be terminated." *Id*. 74:8-11. He did not respond to the letter. *Id.* 30:7-11. Moreover, Lee was aware that a call-in could have saved him from termination. In 1993, he overslept, was late and called in. *Id.* 31:7-32:2. His supervisor, Ronnie Highsmith, was able to stop the termination. *Id.* 31:22-32:8.

Although Lee now raises an allegation of constructive discharge, he did not plead constructive discharge, only that his employment was terminated. In any case, Lee has not established that the Casino Queen constructively discharged him. As explained by the Seventh Circuit,

> The 'working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because ... an employee is expected to remain employed while seeking redress.'" *McPherson* [*v. City of Waukegan,* 379 F.3d 430, 440 (7th Cir. 2004] (quoting *Robinson v. Sappington,* 351 F.3d 317, 336 (7th Cir.2003)). To maintain a claim

10

> for constructive discharge, [Plaintiff] must show that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders,* 542 U.S. 129, 147 (2004) (citations omitted).
> ***Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006)**.

There are no facts showing that Lee suffered working conditions that were "so intolerable as to force a reasonable person to leave."

Lee's claim that the Casino Queen had a history of terminating African-Americans - and not white people - for this offense fails on two grounds. First, Lee's own previous experience was that he could call in late and retain his position. Second, Lee has not identified any individuals outside the protected class who were no call/no show but kept their positions.

Employers are not expected to possess the omniscience that would cause them to know that a person who did not come to work, did not call in, and did not respond to a call and a letter from the employer still wanted to maintain his employment. Lee's statements that he felt pressured or that he was told that if he returned he would be treated in a humiliating manner are simply insufficient to raise a genuine issue of material fact. The Casino Queen rightly believed that Lee had abandoned his job. Lee cannot base his discrimination claim on his termination from employment. On the issue of termination of employment, he has failed to establish that his performance met the Casino Queen's legitimate expectations.

That does not end the matter, however, because Lee claims that he was discriminated against in the four years prior to his termination when he was given

Employee Warning Notices and was twice suspended for conduct for which white employees were not disciplined. For example, Lee was given warning notices on October 28, 2005, and November 1, 2005, for failure to give adequate notice of a doctor's appointment, but he testified that it "was not a problem" when a white employee, Jerry Brewmeister, committed the same violation. Lee Dep. 58:15-59:6. On March 4, 2005, Lee received a three-day suspension for not filling out the proper paperwork on a found twenty dollar bill. According to Lee, a white employee, Don Paulick, found money, turned it in the same way as Lee, and was not written up. *Id*. 69:16-70:9. Lastly, Lee was suspended on October 20, 2005, for turning in the wrong blackjack box, but Lee testified that he was working as a team with a white employee, "Richard," who was equally, if not more, culpable, but "Richard" was neither suspended nor written up.[3]

In sum, Lee's testimony is sufficient to show that warnings and suspensions were given in a discriminatory manner or that other employees were not required to meet the Casino Queen's expectations. Additionally, the infractions identified by the Casino Queen are few and minor, given Lee's extended employment with the Casino Queen. They do not prove that Lee failed to meet the Casino Queen's legitimate expectations - up until the time of his job abandonment. Therefore, summary judgment is not appropriate on the second prong of the *McDonnell Douglas* analysis.

Since Lee has passed the second prong of *McDonnell Douglas*, the disputed third and fourth prongs must be analyzed. The Casino Queen admits that Lee's suspension

---

[3] Three of these acts satisfy the elements of the single-filing doctrine, in that they occurred within the 300–day period between August 19, 2005, and June 15, 2006.

over the found money was an adverse employment action. The parties dispute whether Lee's request for a shift change amounted to an adverse employment action.

In *Griffin v. Potter*, **356 F.3d 824 (7th Cir. 2004)**, the Seventh Circuit stated, "An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." **356 F.3d at 829 (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)).** The Court then explained in detail that an adverse employment action "significantly alters the terms and conditions of the employee's job," and does not include such actions as harder work assignments, increased commute, altered work hours, unfair reprimands or refusal to allow a preferred vacation schedule. ***Id.* (collecting cases)**.

The hurdle that the Casino Queen cannot surmount is that the shift issue involves not *when* Lee was working but *where*. Lee professed himself to be happy with the time period during which he was working. He requested - and provided a doctor's note supporting - a move to a smoke-free area of the Casino Queen. As the Casino Queen points out, the Court does not act as a "super-personnel department" intervening in the daily operations of a business. However, Lee named several white employees - Bill Erling, Ed Fitzsimmons, Don Paulick and Rich Lay - who, he says, received preferential treatment when they requested assignments in smoke-free areas. *Id*. 88:22-89:1. He testified that he was consistently put in the smokiest areas of the casino and that he waited six months for a shift change despite his doctor's note. Considering all relevant factors, the Court finds that Lee has raised a triable issue as to whether the failure or refusal to transfer him to a

less smoke-filled environment significantly altered the terms and conditions of his job and amounted to an adverse employment action.

In sum, Lee has provided sufficient evidence to show that he was subjected to adverse employment actions and fulfills the third element of the analysis.

On the fourth element of the *McDonnell Douglas* analysis, the Casino Queen argues that Lee has failed to establish that similarly situated employees not in the protected class received more favorable treatment. This Court disagrees. As stated above, Lee named several white employees who received preferential treatment when they requested assignments in smoke-free areas. He also testified that he was suspended for putting a blackjack box in the wrong location, but the white employee with whom he was working was neither suspended nor written up. Accordingly, Lee has provided evidence of similarly situated employees outside the protected class who received more favorable treatment. He fulfills the fourth element of the *McDonnell Douglas* analysis and presents a prima facie case of discrimination.

The Casino Queen has not articulated legitimate non-discriminatory reasons for Lee's suspension(s) and delayed shift change that would satisfy the *McDonnell Douglas* burden-shifting test. The Casino Queen claims that Lee correctly received the suspension for failing to properly report the finding of lost money and eventually received the requested shift change. However, the Casino Queen provides no explanation for the disparity between its actions towards Lee and those taken towards employees outside the protected class. Its explanation that there was no job available in non-smoking areas at the

time of Lee's request fails in light of his testimony that others received preferential transfers. The Casino Queen has not met its burden under *McDonnell Douglas*, and, as a result, summary judgment is not warranted on Lee's claims for racial discrimination.

B.  **Hostile work environment**

A hostile work environment claim involves harassment in the workplace, which can constitute prohibited discrimination in the terms and conditions of employment. *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). To demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that his work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 755, 787 (1998)). *See also Hilt-Dyson v. Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002). The plaintiff must show that the harassment was based on his membership in a protected class, that the conduct was severe and pervasive, and that there is a basis for employer liability. *Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742, 754 (1998); *Cerros*, 288 F.3d at 1045; *Mason v. Southern Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

In the case at bar, for Lee to prove that the Casino Queen maintained a racially-hostile environment, he must show (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe and

pervasive to alter the conditions of his environment; and (4) there is basis for employer liability. *See Parkins v. Civil Constructors of Ill., Inc.*, **163 F.3d 1027, 1032 (7th Cir. 1998).**

Lee's claim that the Casino Queen maintained a racially-hostile environment survives summary judgment. Beyond the evidence discussed above, Lee offers other instances in which he was subjected to racial discrimination including testimony (1) that inappropriate comments made by his supervisor; (2) that disciplinary measures which were applied in a racially-disparate manner; and 3) that white employees received preferential shifts, transfers, and overtime opportunities.

Lee testified to a number of harassing statements made by his supervisor, Sergeant Buckley. For example, Lee stated that Buckley said derogatory things to him, "like I look like a Chia pet. I could pour some water on my head, and I look like a Chia pet." Lee Dep. 73:15-16. Lee also testified that Buckley discouraged him from applying for a promotion to corporal in security in 1994 or 1995. *Id*. 10:24-13:4. According to Lee, Buckley told him, "Some of you need not apply for this job because you're not going to get it anyway." *Id*. 13:4-9. Lee felt that he was discriminated against because of the way Buckley talked to him, saying "you people" when he was referring to African-Americans, as in "after you people eat, all you want to do is take a nap." *Id*. 14:15-19; Doc. 288-1, p. 162.

Lee has also put before the Court allegations of harassment based on claims he has heard from other employees. *See Tutman v. WBBMTV/CBS, Inc.*, **54 F.Supp.2d 817, 826 (N.D.Ill. 1999) (collecting cases) ("[I]t is permissible for a court to consider**

16

**harassment of third parties in hostile work environment claims)**. According to Lee, African-American employees were intimidated and would not report incidents of racial discrimination because of their fear of retribution. For example, Kim Harris stated that she could not talk to Lee because he was "hot," *i.e.* that Buckley "had told them not to talk to him." Doc. 288-1, p. 161.

It is clear that a reasonable person would have found the environment Lee described to be hostile or abusive, and that he perceived it to be so. In sum, Lee has alleged a pattern of racial animus sufficient to show that a hostile work environment had been created.

C. **Severance of Lee's claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)**

The Casino Queen moves to sever Lee's claims and those of any other Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b). Rather than rehearse in its entirety the Court's analysis of this issue, the parties are referred to the Court's Memorandum and Order denying the Casino Queen's motion to sever as to Chanel Jordan (Doc. 363), as well as its more recent order (Doc. 495). For the reasons stated therein, the Court will make no decision on severance as to Lee until such time as the ultimate number of Plaintiffs and claims that remain for trial are known.

V. **Conclusion**

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Forrest Lee (Doc. 288). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 18th day of January, 2011**


　　　　　　　　　　　　　　　　**s/Michael J. Reagan**
　　　　　　　　　　　　　　　　**MICHAEL J. REAGAN**
　　　　　　　　　　　　　　　　**United States District Judge**