IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIKA RENEE RILEY-JACKSON, )
et al., )
 )
    Plaintiffs, )
 )
v. )    Case No. 07-CV-0631-MJR
 )
CASINO QUEEN, INC., a corporation, )
 )
    Defendant. )

**MEMORANDUM AND ORDER**
**(Denying Doc. 146 Defendant Casino Queen's motion for summary judgment**
**as to Plaintiff Jill Hoskins)**

**REAGAN, District Judge:**

    **I.**    **Introduction**

    Jill Hoskins brings claims of racial discrimination, hostile work environment and retaliation against her employer, Casino Queen, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981. Hoskins' claims were first filed on November 12, 2007, in Plaintiffs' Second Amended Complaint (Counts 24, 81 and 117). Hoskins did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); however, in April 2006, she filed a charge with the Illinois Department of Human Rights ("IDHR").[1]

---

[1]Hoskins states that she filed a charge of discrimination with the EEOC, but the exhibit referenced to support this statement clearly shows that her charge was filed with the Illinois Department of Human Resources ("IDHR") and not with the EEOC. Moreover, Hoskins has not provided any documentation as to whether the IDHR investigated the charges, what the outcome of any investigation was or when the IDHR completed its investigation. Hoskins has not provided a copy of a notice sent to her by the IDHR informing her of her right to either file a complaint with the Human Rights Commission or commence a civil action. *See* **775 ILCS**

1

Now before the Court is the Casino Queen's motion for summary judgment or, in the alternative, motion to sever, submitted July 2, 2010 (Doc. 146), which is fully briefed, in that a response (Doc. 205), a reply (Doc. 336) and a sur-reply (Doc. 344) have been filed. The Court's analysis begins with the familiar standard of review for summary judgment motions.

## II. Legal Standard Governing Summary Judgment Motions

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009) (citing FED. R. CIV. P. 56(c)). *Accord Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008); *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

---

**5/7A-102**. In sum, Hoskins gives the Court no information beyond the filing of charges of race discrimination and retaliation on April 11, 2006, more than 18 months before she joined the instant action - November 12, 2007.

2

When the non-moving party bears the burden of proof, though, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. *Reget*, **595 F.3d at 695.** To survive summary judgment, the non-movant must provide admissible evidence on which the jury or court could find in his favor. *See Maclin v. SBC Ameritech*, **520 F.3d 781, 786 (7th Cir. 2008).**

In deciding a summary judgment motion, the court may not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. *National Athletic*, **528 F.3d at 512 (citing** *Doe v. R.R. Donnelley & Sons Co.*, **42 F.3d 439, 443 (7th Cir. 1994)).** As the Seventh Circuit Court of Appeals succinctly stated last month: "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria, Illinois*, **627 F.3d 295, 297 (7th Cir. Dec. 6, 2010) (quoting** *Brewer v. Board of Trustees of the University of Illinois*, **479 F.3d 908, 915 (7th Cir. 2007)).**

Stated another way, summary judgment is the "put up or shut up" moment in litigation – the point at which the non-movant must marshal and present to the court the admissible evidence which he contends will prove his case. *Goodman v. National Security Agency, Inc.*, **621 F.3d 651, 654 (7th Cir. 2010) (citing** *Everroad v. Scott Truck Systems, Inc.*, **604 F.3d 471, 476 (7th Cir. 2010),** *Eberts v. Goderstad*, **569 F.3d 757, 767 (7th Cir. 2009), and** *AA Sales & Associates, Inc. v. Coni-Seal, Inc.*, **550 F.3d 605, 613 (7th Cir. 2008)).** With these principles in mind, the Court turns to the motion in the instant case.

### III. Analysis

Hoskins, an African-American female, has been employed as a cashier by the Casino Queen since October 28, 2004. Hoskins makes numerous claims of racial discrimination and hostile work environment, including disparate discipline and treatment for the use of vulgar language, eating at inappropriate times or places, use of cell phones and appearance. She also claims that African-Americans were racially discriminated against in the Casino Queen's promotion practices. But central to her complaint is her assertion that the Casino Queen discriminated against her and retaliated against her after she alleged that a co-worker, Sara Craine, was a racist.

Hoskins testified to the following sequence of events. On December 27, 2005, Hoskins was following the rotation for seating customers, but when she seated three tables of African-American customers in Craine's section, Craine went over to them and told them to get up. When the African-American customers asked where they were going, Craine told them that she did not know but that Hoskins would find somewhere for them to go. Directly after moving the three tables of African-American customers out of her section, Craine twice accepted a table of white customers with no problem.

Hoskins complained to her supervisors, Monica Bird and Kelly Carey, about Craine's treatment of African-American customers. She told Carey that Craine was a racist because she only moved African-American customers out of her section.

Because Hoskins saw no action being taken against Craine, she reported the incident to Rev. Johnny Scott, President of the East St. Louis Chapter of the NAACP, who

told Hoskins that he would contact the Casino Queen and, if necessary, would press the matter. On January 5 and 6, 2006, Craine was suspended *with pay* pending an investigation. Carey subsequently informed Craine that the allegations against her were "unfounded."

Both Craine and Hoskins were instructed not to talk about the incident on the floor. According to Hoskins, in violation of these instructions, Craine talked about the incident openly. Hoskins reported this to Carey. After looking into the incident, Carey and Food and Beverages Director, Dominic Gramaglia, suspended Hoskins for two days *without pay* for creating a hostile work environment.

Hoskins was again suspended in May 2009 for leaving money unattended. She testified that the suspension was racially-motivated and in retaliation for joining this lawsuit. Hoskins testified that she was diagnosed with trigger finger, reported this to her supervisor and was sent to security to fill out an accident report. Security informed her that, since the injury was work-related, she would have to take a drug test. The test results were positive, and a call to Hoskins' doctor confirmed that Vicodin and Motrin had been prescribed to treat the trigger finger. Security took her to Memorial Hospital to have a second test done; she was told that her supervisor would be notified. After the test, security drove her back to the Casino Queen where she returned to the floor and began working. She was called into Carey's office where Director of Security Edward Muzzey told her she would have to leave work because the first test was positive. Even though she showed him the prescription bottles and another call to the doctor's office confirmed that the medications had been prescribed, she was told that she had to leave work. Two days

later she was told to return for her regular shift, but that same afternoon, she was again called into Carey's office and was told she was suspended for not telling them she was going to Memorial Hospital and for leaving money unattended. But, according to Hoskins, the money was locked in a drawer where it was supposed to be, and security had not allowed her to return to the floor after the first drug test. Furthermore, Hoskin testified that there was no confidentiality about her drug testing, and "everyone on the floor" was making fun of her for having to have the second drug test.

The Casino Queen counters that Hoskins was suspended for arguing on the floor in front of customers and that Hoskins admits to doing so. Additionally, Hoskins received 18 employee warning notices for violations of company policy between May 16, 2005, and April 10, 2007.

### A. § 1981 Claims - Four year statute of limitations

As the Court has previously found, the four-year statute of limitations for this action runs from September 4, 2003. With respect to Hoskins, the issue is moot because she did not begin her employment until October 28, 2004.

### B. Filing a timely charge of discrimination

The Casino Queen asserts that it is entitled to summary judgment on Hoskins' Title VII claims because she failed to file a timely charge of discrimination with the EEOC, and the single-filing rule is inapplicable to her claims.

On April 11, 2006, Hoskins filed a timely charge with the IDHR. Hoskins asserts that filing a charge of discrimination with the IDHR preserves a Title VII claim just as if it was filed with the EEOC.

In order "to minimize duplication of effort in the handling of deferred charges ... and to achieve maximum consistency of purpose and results," *Sofferin v. American Airlines, Inc.*, **923 F.2d 552, 554 (7th Cir.1991) (quoting *Commercial Office Prods.*, 486 U.S. 107, 112 (1988)),** the EEOC and the IDHR have a dual filing system that allows for filing a Title VII claim with the EEOC to be considered as an effective filing "with the corresponding state agency, *and vice versa*." *Garcia v. Village of Mount Prospect,* **360 F.3d 630, 643 n. 13 (7th Cir. 2004) (citing *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 224 (7th Cir. 1993) (emphasis added))**. Consequently, filing a charge with the IDHR is effectively also filing a charge with the EEOC. *Id*.

However, as stated above, Hoskins is remiss in that she fails to provide any information regarding the IDHR's handling of her charge. Because of this failure, the Court can only conclude that she has not shown that her charge was properly perfected. *See McGee v. United Parcel Service, Inc.* **2002 WL 449061, \*2 (N.D.Ill. 2002) (citations omitted)**. Accordingly, Hoskins must proceed, if she is to proceed at all, under the single-filing rule.

As frequently recited, under the single-filing rule, a noncomplying plaintiff may join a suit - or "piggyback" onto a suit - initiated by a complying plaintiff and may be exempt from filing an EEOC charge if her claim "arises out of the same unlawful conduct" as those of other plaintiffs with timely-filed charges. *Horton v. Jackson County Bd. of*

7

*County Comm'rs*, 343 F.3d 897, 900 (7th Cir. 2003). Parties who have not filed charges with the EEOC may join as plaintiffs in a civil action with plaintiffs who have filed EEOC charges; the sole restriction is that the only issues properly before the Court are those which the charging parties have standing to raise. *Muka v. Nicolet Paper Co.*, **452 F. Supp. 491 (E.D. Wis. 1978), cited with approval in** *Ekanem v. Health & Hospital Corp. of Marion City, Indiana*, **724 F.2d 563 (7th Cir. 1983);** *see also Liberles v. County of Cook*, **709 F.2d 1122 (7th Cir. 1983) (union members were allowed to seek relief in federal courts based on EEOC charge filed by union leader)**. EEOC charges are to be interpreted with liberality; nevertheless, "the only claims of discrimination which are cognizable are those that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Schnellbaecher v. Baskin Clothing Co.*, **887 F.2d 124, 127 (7th Cir. 1989) (citing** *Babrocky*, **773 F.2d at 864)**.

"[T]he filing of a timely charge with the EEOC is, as the Court noted in *Zipes v. Trans World Airlines, Inc.*, **455 U.S. 385, 393 (1982)**, like a statute of limitations; and if there are two victims of the same or similar wrongful activity and one sues, his suit does not toll the statute of limitations for the other to sue." *Horton*, **343 F.3d at 897**. Thus, the single-filing rule cannot revive a stale claim. The rule is "inapposite to time-barred claims [of former employees]" because employers are not on notice or afforded "an opportunity to conciliate[ ] the claims of long departed employees." *EEOC v. Harvey L. Walner & Assoc.*, **1995 WL 470233, \*4 (N.D.Ill. 1995);** *see also E.E.O.C. v. J.D. Streett & Co. Inc.*, **2006 WL 839444, at \*2 (S.D.Ill. 2006)**. "Even in class actions, identified in *Horton* as the context

8

for the most liberal application of the single-filing rule, **343 F.3d at 900**, only those [class members] who could have filed a charge at or after the time a charge was filed by the class representative can be included in the class." *Griffin v. Sutton Ford, Inc.*, **452 F.Supp.2d 842, 847 (N.D.Ill. 2006) (citing** *Movement for Opportunity & Equal. v. Gen. Motors Corp.*, **622 F.2d 1235, 1248 (7th Cir. 1980))**.

The Court has reviewed Hoskins' charges and finds that they are reasonably related to and "arise[] out of the same unlawful conduct" as those of Plaintiffs with timely-filed charges. The complaint alleges that Casino Queen entered into a course and pattern of conduct whereby it discriminated against Plaintiffs based on race and failed and/or refused to take action to end and correct racial harassment, discrimination and hostile work environment, as well as retaliating against African-American employees for exercising their civil rights and for complaining and/or reporting racial discrimination.

While Hoskins did not file a charge of discrimination directly with the EEOC and her IDHR charge fails for reasons set forth above, her 2006 and 2009 suspensions are both timely. The 2006 suspension clearly falls within the 300-day window (August 6, 2005 - June 12, 2006). And Hoskins was not required to file an additional EEOC charge for the 2009 suspension. *See E.E.O.C. v. Custom Companies, Inc.*, **2004 WL 765891, at *12 (citing** *McDonald v. United Air Lines, Inc.*, **587 F.2d 357, 361 (7th Cir. 1979);** *Levine v. Bryant*, **700 F.Supp. 949, 957 (N.D. Ill. 1988);** *Horton v. Jackson County Bd. of Com'rs*, **343 F.3d 897, 899 (7th Cir.2003))**. Requiring an employee to go through a second EEOC filing for post-charge claims would not further the purpose of providing notice to the employer and an

9

opportunity for conciliation, but would merely lead to an "increased burden for both the EEOC and the employer." *Id.*[2]

Stated simply, Hoskins' claims are not time barred.

### C. *McDonnell Douglas* Burden-Shifting Model

In order to prevail, a § 1981 plaintiff must prove that she has been the victim of intentional discrimination. A plaintiff may establish a claim under § 1981 either directly or indirectly. *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-05 (1973)**. To establish her claims directly, Hoskins must put forth direct or circumstantial evidence raising a genuine issue as to the Casino Queen's discriminatory intent in carrying out the challenged employment actions. *See id.; see also Nagle v. Village of Calumet Park,* **554 F.3d 1106, 1114 (7th Cir. 2009).** Hoskins must show either an acknowledgment of discriminatory intent by the Casino Queen or circumstantial evidence that provides the basis for a claim of intentional discrimination. *See Huff v. Uarco, Inc.*, **122 F.3d 374, 380 (7th Cir. 1997)**.

---

[2]A separate issue is raised in the Casino Queen's reply regarding Hoskins' 2009 suspension. The Casino Queen asserts that summary judgment is warranted on this claim because Hoskins failed to allege it in her Complaint, and the Casino Queen was not made aware of this claim until May 26, 2010 - 10 days before the discovery cut-off. In Hoskins' sur-reply, she states that the Casino Queen was aware of these allegations in May 2009 when she submitted a written statement complaining that she was suspended because of racial discrimination and in retaliation for filing the instant action. While the Court will not venture into the realm of "constructive amendment," which Judge Posner has criticized as "the most otiose" of all constructive doctrines, *see Torry v. Northrop Grumman Corp*., **399 F.3d 876, 878 (7th Cir. 2005)**, nonetheless, the Court will allow this claim to proceed. The Casino Queen suffers no unfair surprise because it has been aware of Hoskins' claim since May 2009, and the claim itself is part and parcel of the current proceeding.

In order to demonstrate a prima facie case of racial discrimination, Hoskins must establish the following elements: (1) she belonged to a protected class; (2) she met the Casino Queen's performance expectations; (3) she suffered an adverse employment action; and (4) the Casino Queen treated similarly-situated persons not in the protected class more favorably. *See McDonnell Douglas*, **411 U.S. at 802-03;** *see also Perdomo v. Browner*, **67 F.3d 140, 144 (7th Cir. 1995)**. Once a prima facie case is established, the burden of production shifts to the Casino Queen to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The burden of persuasion remains with Hoskins at all times. *See St. Mary's Honor Center v. Hicks*, **509 U.S. 502 (1993)**. If the Casino Queen articulates a nondiscriminatory reason, it has satisfied its burden, and Hoskins must then establish that the Casino Queen's reason was pretextual. *Id.*

### 1. Direct Method

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, **420 F.3d 712, 720 (7th Cir. 2005) (citing** *Eiland v. Trinity Hosp.*, **150 F.3d 747, 750 (7th Cir. 1998))**. "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated

employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

Hoskins has marshaled significant circumstantial evidence supporting her claims of racial discrimination and retaliation. In addition to the circumstances surrounding her two suspensions detailed above, Hoskins testified that not long after she joined this lawsuit, she was informed by a supervisor, Theresa, that another supervisor, David Riddle, had pulled up the names of the members of the lawsuit on a computer and had stated that all of the individuals in the lawsuit would be fired. Also as discussed above, Hoskins testified to a litany of examples of behavior toward or comments directed at other employees within the protected group that evidence racial discrimination.

In sum, Hoskins has presented sufficient circumstantial evidence to create "a triable issue of whether the adverse employment action[s] of which [s]he complains had a discriminatory motivation." *Rudin*, **420 F.3d at 721 (citing** *Wallace v. SMC Pneumatics, Inc.*, **103 F.3d 1394, 1397 (7th Cir. 1997))**. Because Hoskins has successfully staved off summary judgment under the direct method, the Court need not also consider her claims under the indirect, burden-shifting method.

D.   **Hostile work environment**

To recover for a hostile work environment, a plaintiff must show that she was "subject to unwelcome harassment," that the harassment was based on her race (or "color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1)), that the harassment was severe

or pervasive enough to "alter the conditions of the employee's environment and create a hostile or abusive working environment," and that "there is a basis for employer liability." *Mason v. S. Ill. Univ.*, **233 F.3d 1036, 1043 (7th Cir. 2000)**. To demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that her work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Gentry v. Exp. Packaging Co.*, **238 F.3d 842, 850 (7th Cir. 2001) (quoting** *Faragher v. City of Boca Raton*, **524 U.S. 755, 787 (1998)).** *See also Hilt-Dyson v. Chicago*, **282 F.3d 456, 462-63 (7th Cir. 2002).** The plaintiff then must show that the harassment was based on her membership in a protected class, that the conduct was severe and pervasive and that there is a basis for employer liability. *Burlington Indus., Inc. v. Ellerth*, **524 U.S. 742, 754 (1998);** *Cerros*, **288 F.3d at 1045;** *Mason,* **233 F.3d at 1043.**

Hoskins has offered sufficient evidence to support her claim that the Casino Queen maintained a racially hostile environment. The incidents described above that resulted in Hoskins' suspensions evidence a work environment that a reasonable person would find hostile or abusive, and one that Hoskins did in fact perceive to be so. Hoskins also testified that she was injured when she slipped and fell at work. Her doctor released her to return to work on light duty, but her supervisor required her to perform her regular duties even though white employees performed light duty, including folding napkins or taking menus to tables.

13

Additionally, Hoskins testified to instances of unwelcome harassment based on incidents she observed and complaints she heard from other employees. *See Dockter v. Rudolf Wolff Futures, Inc.,* **913 F.2d 456, 460 (7th Cir. 1990)**. For example, Hoskins testified that her daughter, Laquisha Midgett, was suspended for eating some cheese that she had bought on her lunch break, but a white server, Erica Canary, would eat every day without comment by supervisors who saw her eating. Hoskins also stated that Keish Crutcher, an African-American, was reprimanded for merely looking at the time on his cell phone, but a white employee, walking across the floor and talking on his cell phone, was only told to put the phone away. Hoskins testified that an African-American employee, Darlene, was told to remove the light brown or auburn color from her hair or be suspended, but a white employee, Nicki, had three different colored highlights in her hair without being told that she must remove them.

It is clear that a reasonable person would have found the environment Hoskins described to be hostile or abusive, and that she perceived it to be so.

### E. The *Faragher-Ellerth* Affirmative Defense

The Casino Queen asserts the *Faragher-Ellerth* affirmative defense, submitting that it had an express anti-harassment policy which set forth a clear reporting procedure and that Hoskins failed to reasonably avail himself of this anti-harassment policy.

The Seventh Circuit, in *McPherson v. City of Waukegan,* **379 F.3d 430 (7th Cir. 2004)**, explained, "[w]hen a supervisor is the harasser, the employer is strictly liable

for his or her conduct, subject to any affirmative defenses that may preclude its liability."

**379 F.3d at 439 (citing** *Parkins v. Civil Constructors of Ill., Inc.***, 163 F.3d 1027, 1032 (7th Cir. 1998)).** The Court then discussed the *Faragher/Ellerth* affirmative defense "set out in the companion cases of *Burlington Indus., Inc. v. Ellerth,* **524 U.S. 742 (1998)** and *Faragher v. City of Boca Raton,* **524 U.S. 775 (1998)**." *Id*. In *Ellerth*, the Supreme Court stated,

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment. *Id***. (quoting 524 U.S. at 765)**.

In *Faragher*, the Supreme Court further limited the availability of the affirmative defense by stating, "the combined knowledge and inaction [by high-echelon officials] may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." **524 U.S. at 789.**

The *Faragher-Ellerth* affirmative defense is not available to the Casino Queen because (1) the Casino Queen, in suspending Hoskins, took "tangible employment" actions against her; (2) Hoskins has shown that high ranking officials of the Casino Queen, including Thomas Monaghan and Jeff Watson, were informed of the racially hostile work environment but failed to address reports of discrimination; and (3) Hoskins has named

numerous employees who were discriminated against by management. Moreover, the fear of retaliation makes the Casino Queen's anti-harassment policy ineffective in addressing racial discrimination. As such, the Casino Queen cannot meet the burden imposed by the *Faragher/Ellerth* affirmative defense.

> F. **Severance of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)**

The Casino Queen moves to sever Hoskins' claims and those of any other Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b). As previously stated (Docs. 363, 495), the Court will make no decision on severance until the ultimate number of Plaintiffs and claims that remain for trial are known.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Jill Hoskins (Doc. 146). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 25th day of February, 2011**

>> s/Michael J. Reagan
>> **MICHAEL J. REAGAN**
>> **United States District Judge**