# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIKA RENEE RILEY-JACKSON,   )
et al.,   )
       )
     **Plaintiffs,**   )
       )
v.   )      **Case No. 07-CV-0631-MJR**
       )
CASINO QUEEN, INC., a corporation, )
       )
     **Defendant.**   )

## MEMORANDUM AND ORDER
### (Denying Doc. 137 the Casino Queen's motion for summary judgment as to Lawrence Burton)

**REAGAN, District Judge:**

## I.    Introduction

On September 4, 2007, Lawrence Burton ("Burton") was among the 20 original plaintiffs who brought this action against his employer, Casino Queen, Inc. ("Casino Queen"). Burton's complaint is brought pursuant to **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")** and **42 U.S.C. § 1981**, and alleges that the Casino Queen discriminated against him because of his race, African-American, during his employment at the Casino Queen, from June 1993 through the present time. Specifically, Burton's complaint asserts two counts (Counts 8 and 64) against the Casino Queen: (1) unlawful racial discrimination, harassment and hostile work environment, in violation of Title VII; and (2) deprivation of his right to the enjoyment of all benefits,

privileges, terms and conditions of his employment contract "as are enjoyed by white citizens," in violation of § 1981. Now before the Court is the Casino Queen's summary judgment motion and memorandum, filed July 2, 2010 (Doc. 137), which is fully briefed and ready for disposition.

## II.   Factual Background

Burton is an African-American male who has been employed in the Food and Beverage Department of the Casino Queen since 1995. Burton was originally hired as a barback and was promoted to bartender in 1997. As of the time of his deposition, Burton was still employed by the Casino Queen and a member of Union Local #74. On June 15, 2006, Burton filed a discrimination charge with the EEOC.[1] A notice of right to sue was issued by the EEOC on or about June 4, 2007.

Burton alleges that the Casino Queen subjected African-American employees to racial discrimination and a hostile work environment. Burton testified that supervisors would talk to white employees but would not speak to African-American employees. Burton stated that African-American employees were drug tested if management believed

_____

[1]Once again, counsel has submitted a document drafted without the care expected of attorneys practicing in this Court. The Casino Queen states that Burton failed to file an EEOC charge of discrimination and argues that the single-filing rule is inapplicable. But the Casino Queen points to Doc. 54 in its summary judgment motion - attached to which is Burton's EEOC charge and his notice of right to sue (Doc. 54-1, p. 12; Doc. 54-2, p. 4). While the Court is fully cognizant of the sheer magnitude of this proceeding, it cannot but note that - considering filings by Plaintiffs and Defendant - there are such errors as to almost every briefing herein. Discovering and addressing these errors adds to the burden on the Court's resources and multiplies these proceedings because opposing counsel must respond to them as well.

they came to work under the influence of drugs or alcohol, while recalling specific instances where white employees, who were obviously intoxicated, were only sent home to sleep it off. Burton testified to specific racist remarks made by Danny Ramsey ("Ramsey"), a white bartender, and a white security guard. Burton stated that he reported one of the Ramsey incidents, but Ramsey was not disciplined.

Burton alleges that white bartenders were given special privileges and favorable treatment. He testified that Kelly Carey, a white supervisor, would require black bartenders to begin work immediately at the start of their shifts but allowed white bartenders to sit in the office and smoke with her. Burton stated that he was written up for losing a ticket that needed to be corrected; however, white supervisors, Monica Byrd ("Byrd") and Julie, would falsify drink receipts for white bartenders. Burton testified that he received a write-up for leaving his bank in the cash register at Club Sevens; however, a white bartender took his bank to a local bar and then brought it back without being similarly disciplined. Burton further testified that he was written up for an $81.00 register shortage and served a one-day suspension, but the white barback who was working on the same register was not suspended.

Burton alleges a wide variety of acts of racial discrimination by Julie, a white supervisor. Specifically, he testified that Julie would leave the office door open and watch black employees clock in and out, but would not do the same with white employees. Burton testified that Ronnie Moore, a black bartender, was written up for leaving five minutes early, but several white bartenders were not written up when they left thirty

minutes early. Burton stated that he was repeatedly written up for not signing out; however, Julie would simply tell white bartenders that she would take care of it when they forgot to sign out.

Burton also makes a failure to promote claim. He does not claim that he has applied for a promotion and was passed over. Rather, he contends that the Casino Queen generally failed to post jobs, and the failure to post the jobs was an act of discrimination.

The Casino Queen contends that Burton has not been subjected to racial discrimination or a racially hostile work environment. It presents 42 Employee Warning Notices that Burton received for violating various company policies during his employment. It claims that Burton did not bid on any new position that opened or express interest in a promotion. The Casino Queen also insists that Burton failed to report any allegation of racial discrimination to human resources, his supervisor or his union representative[2] at any point during his employment. On these grounds, the Casino Queen asserts that Burton has not presented evidence of discrimination or a racially-hostile work environment.

## III.    Legal Standard Governing Summary Judgment Motions

Under **Federal Rule of Civil Procedure 56**, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

---

[2] There is one reference in the record to a voice-mail message left for Kevin McNatt, a union representative, that occurred "years ago."

to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Breneisen v. Motorola, Inc.*, **512 F.3d 972 (7th Cir. 2008) (citing** *Celotex Corp. V. Catrett*, **477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold*, **481 F.3d 512, 516 (7th Cir. 2007)).** *Accord Levy v. Minnesota Life Ins. Co.*, **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this district court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co.*, **491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison*, **488 F.3d 756, 764 (7th Cir. 2007).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, **477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002).** To successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, **278 F.3d 693, 699 (7th Cir. 2002).** A non-moving party may submit excerpts of his own deposition as "affirmative evidence to defeat summary judgment," *Williams v. Seniff*, **342 F.3d 774, 785 (7th Cir. 2003)**, and a plaintiff may present an affidavit relating facts of which he has personal knowledge to support a discrimination claim. *Volovsek v. Wisc. Dep't of Agriculture, Trade and Consumer Protection,* **344 F.3d 680, 690 (7th Cir. 2003).**

## IV.    Analysis

### A.    Procedural posture and four-year statute of limitations on § 1981 claims

Burton filed a charge of discrimination with the EEOC on June 15, 2006. Accordingly, any of Burton's claims that fall within the 300-day period between August 19, 2005, and June 15, 2006, are actionable under Title VII. Additionally, acts contributing to the claim that occurred outside of the 300-day period may also be actionable under the analysis set forth by United States Supreme Court in *National Railroad Passenger Corp. v. Morgan*, **536 U.S. 101 (2002)**. There, the Court held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." **536 U.S. at 117, 120-21.** As a result, Burton may obtain relief for other time-barred acts by linking them to acts which are within the limitations period. *Selan v. Kiley*, **969 F.2d 560, 564 (7th Cir. 1992).**

In *Selan*, the Seventh Circuit explained that "[f]or purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id.* The Court discussed three viable continuing violation theories: (1) cases involving hiring or promotion practices where the employer's decision-making process took place over a period of time so that it was difficult to pinpoint the exact day the "violation" occurred; (2) cases in which the employer has an express and open policy that is alleged to be discriminatory; and (3) cases in which the plaintiff charges that the employer has followed a covert practice of discrimination–this theory is sometimes referred to as a "pattern of ongoing discrimination" or "serial violation." *Id.* **at 564-65 (citations omitted).** Of these three continuing violation theories, the first and third theories may be

applicable to this case. The Court concludes, on the current record, that Burton's claims of discrimination and hostile work environment may be considered under the continuing violation theory.

As to acts which occurred after Burton's EEOC filing, courts have found that a requirement that any post-charge claims go through a second EEOC filing procedure would not further the purpose of providing notice to the employer and an opportunity for conciliation.[3] *See E.E.O.C. v. Custom Companies, Inc.,* **2004 WL 765891, at \*12 (citing** *McDonald v. United Air Lines, Inc.,* **587 F.2d 357, 361 (7th Cir. 1979);** *Levine v. Bryant,* **700 F.Supp. 949, 957 (N.D. Ill. 1988);** *Horton v. Jackson County Bd. of Com'rs,* **343 F.3d 897, 899 (7th Cir.2003)).** Thus, requiring Burton to file an additional EEOC charge for acts that occurred after his original EEOC filing would merely lead to an "increased burden for both the EEOC and the employer." *Id.*

Burton's claims brought pursuant to 42 U.S.C. § 1981 are subject to a four-year statute of limitations. *Jones v. RR. Donnelley & Sons Co.,* **541 U.S. 369, 381-82 (2004);** *Dandy v. United Parcel Serv., Inc.,* **388 F.3d 263, 269 (7th Cir. 2004).** Therefore, Burton's § 1981 claims regarding discriminatory acts that allegedly took place prior to September 4, 2003, are barred by the applicable statute of limitations.

**B.** **Title VII and § 1981 discrimination claims**

---

[3] Burton offers case law showing that a second EEOC charge is not required for acts committed in retaliation for filing an EEOC charge. These cases are inapplicable because Burton has not claimed any specific retaliatory act related to either his EEOC filing or his filing the present suit.

Title VII prohibits employers from discriminating against employees with respect to the terms and conditions of employment, based on the employees' race, color, religion, sex, or national origin. **42 U.S.C. § 2000e-2(a)(1).** A Title VII plaintiff may satisfy his burden of proving intentional discrimination in two ways. First, the plaintiff may present direct evidence of the employer's discriminatory intent. Second, the plaintiff may use the indirect, burden-shifting analysis delineated in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802 (1973).**

### 1.  Direct evidence of discrimination

In the case at bar, the Casino Queen contends that Burton presents no direct evidence of discrimination, and her claim should be examined under the *McDonnell Douglas* burden-shifting model. Burton responds that he has presented direct evidence of discrimination in the form of comments made by other Casino Queen employees and testimony from the Casino Queen's Human Resource Directors, owners and board of directors.

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, **420 F.3d 712, 720 (7th Cir. 2005) (citing** *Eiland v. Trinity Hosp.*, **150 F.3d 747, 750 (7th Cir. 1998)).** "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Nagle v. Village of Calumet Park*, **554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting** *Hemsworth v. Quotesmith.com, Inc.,* **476 F.3d 487, 491 (7th Cir. 2007)).** Such circumstantial evidence of intentional discrimination needs to be "sufficiently connected to the employment action, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." *Dandy v. United Parcel Service, Inc.* **388 F.3d 263, 272 (7th Cir. 2004) (citing** *Schuster v. Lucent Techs., Inc.,* **327 F.3d 569, 576 (7th Cir. 2003) and** *Cowan v. Glenbrook Sec. Servs., Inc.,* **123 F.3d 438, 444 (7th Cir.1997)).**

For direct evidence of discrimination, Burton cites statements made by Cheryl Childress and Betty Smith, Human Resources Directors for the Casino Queen, as well as the testimony of the Casino Queen's owners and board of directors, Charles Bidwill, Tom Rand and James Koman. These statements do not meet the direct evidence showing as an admission by the employer/decisionmaker, or as circumstantial evidence amounting to direct evidence.

None of those testifying was Burton's supervisor or made an adverse employment decision regarding him. Consequently, their testimony cannot be taken as admissions by a decisionmaker of discriminatory animus.

Burton also presents comments, either directed at him or personally heard by him, that were made by Ramsey, a fellow bartender. While gambling at the casino after their shift, Ramsey commented "[y]ou know how you niggers are" to Burton. Doc. 137-1, Burton Dep. 106:3-11. Burton further testified to instances where Ramsey charged an African-American gambler for a drink that was supposed to be free while stating "I just charged her because she's black" (*Id*. at 127:13-24) and where Ramsey told another black bartender "[y]ou know I am racist" (*Id*. at 130:1-5). However, these racially-charged statements do not meet the direct evidence standard because they were made by a fellow bartender and not by Burton's supervisor or any other member of management who may have made an adverse employment decision regarding Burton. Consequently, these comments cannot be taken as admissions by a decisionmaker of discriminatory animus.

Burton also testified that he overheard a white security guard referring to himself, and presumably the Casino Queen security department, as "silent Nazis" on two separate occasions – including once in the presence of Burton's supervisor. *Id*. at 111:17-116:8. Even if the comment was adopted by Burton's supervisor – which is not clear – there is no indication that this comment was made close in time to any adverse employment decision. As a result, the comment does not establish an inference of discrimination under the direct method.

Moreover, none of the testimony and statements provided fulfills the direct evidence method circumstantially. These statements fail to present evidence of derogatory

racial remarks or statements of dislike for a particular race directed at Burton by any person who made an adverse employment decision regarding him.

### 2. The *McDonnell Douglas* burden-shifting model

Since Burton has failed to present direct evidence of discrimination, the Court examines his Title VII and § 1981 claims under the ***McDonnell Douglas*** burden-shifting model. Under this approach, a plaintiff first must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, Burton must show (1) that he was a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably. ***Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.***, **254 F.3d 644, 650 (7th Cir. 2001).**

Once the plaintiff has established a prima facie case, a presumption of discrimination arises, and the employer must produce a legitimate, nondiscriminatory reason for the employment action. ***Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).** At this stage, the employer is not required to prove that it was actually motivated by the proffered reason. Rather, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." ***Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).** If the employer satisfies this obligation, the burden of

production returns to the plaintiff to demonstrated the pretextual nature of the proffered reason. ***Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).**

   The first element of Burton's prima facie case for discrimination is not in dispute. The Casino Queen admits that Burton is a member of a protected class. Thus only the second, third, and fourth elements of Burton's prima facie case need be analyzed.

   The second element of a prima facie case of discrimination under ***McDonnell Douglas*** is a showing that the plaintiff was performing his job satisfactorily. According to the Casino Queen, Burton has failed to establish that his performance met its legitimate expectations. The Casino Queen asserts that Burton received 42 Employee Warning Notices for violating various company policies during his career at the Casino Queen. The Casino Queen contends that these Employee Warning Notices show that Burton's performance did not meet the Casino Queen's legitimate expectations.

   Burton contends that he is not required to establish that he was meeting the Casino Queen's legitimate expectations because his claim is against the very people who evaluated his performance and its legitimate expectations were applied in a discriminatory manner. "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner..., the second and fourth prongs of *McDonnell Douglas* merge – allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry." ***Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir.2002) (citing *Curry v. Menard*, 270 F.3d 473, 478 (7th Cir.2001); *Gordon v. United Airlines, Inc.*, 246 F.3d**

**878, 886-87 (7th Cir. 2001);** *Oest v. Illinois Dept. of Corr.***, 240 F.3d 605, 612 n. 3 (7th Cir.2001);** *Flores v. Preferred Tech. Group***, 182 F.3d 512, 515 (7th Cir.1999);** *Coco v. Elmwood Care, Inc.***, 128 F.3d 1177, 1180 (7th Cir.1997)).**

Burton has testified to numerous occasions where the Casino Queen's expectations were applied in a disparate manner, including: (1) he was written-up for losing a ticket that needed to be corrected, while supervisors would falsify drink receipts for white bartenders (Doc. 137-1, Burton Dep. 37:3-38:24); (2) he received a write-up for leaving his bank in a cash register, while a white bartender was not punished for taking his bank to a local bar before bringing it back (*Id*. at 76:7-77:8); and (3) he was written-up and served a one-day suspension for a shortage of $81.00 at his bar, while a white barback who was working the cash register with him did not receive a write-up or suspension (*Id*. at 58:14-59:23). In sum, Burton's testimony is sufficient to allow a reasonable jury to find that that warnings and suspensions were given in a discriminatory manner or that other employees were not required to meet the Casino Queen's expectations. As such, the second and fourth prongs of *McDonnell Douglas* merge, allowing Burton to move on to the remaining prong of the *McDonnell Douglas* analysis–whether he has shown that he suffered an adverse employment action.

In *Griffin v. Potter*, **356 F.3d 824 (7th Cir. 2004),** the Seventh Circuit stated, "[a]n adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." **356 F.3d at 829 (citing** *Hilt-Dyson v. City of Chicago*, **282 F.3d 456, 465 (7th Cir. 2002))**. The Court then explained in detail that an adverse

employment action "significantly alters the terms and conditions of the employee's job" and does not include such actions as harder work assignments, increased commute, altered work hours, unfair reprimands or refusal to allow a preferred vacation schedule. ***Id.* (collecting cases).**

The Casino Queen admits that a failure to promote is an adverse employment action but argues that Burton's failure to bid on promotions defeats any adverse employment actions that he sustained. The fact that Burton has never bid on a new position or expressed interest in a promotion is not probative. As explained by the Supreme Court,

> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Int'l Bhd. of Teamsters v. U.S.*, **431 U.S. 324, 365 (1977).**

Here, Burton claims that around 1999 the Casino Queen stopped posting or announcing opportunities for promotion. Doc. 137-1, **Burton** Dep. 118:13-119:15. Burton also testified that, while he would have generally been interested in a promotion, he was discouraged by the disparaging treatment that African-American members of management

received.  *Id.* at 119:16-121:2.  Burton provides testimony from Cheryl Childress, a Human Resources Director for the Casino Queen, stating that the number of African-American employees promoted into management had "dwindled" and that she had brought the issue to the attention of the Casino Queen's general manager.  Doc. 111, Childress Dep. 103:9-11, 276:15-277:8.  It is a question of fact whether Burton would have applied for a promotion had the Casino Queen posted opportunities for promotion or had he not felt that application would have been futile.[4]  ***See Int'l Bhd. of Teamsters*, 431 U.S. at 371 n.58 ("While the most convincing proof would be some overt act..., the District Court may find evidence of an employee's informal inquiry, expression of interest, or even unexpressed desire credible and convincing.").**

Reprimands, such as write-ups, typically do not constitute adverse employment actions unless they are accompanied by some tangible job consequence.  ***See e.g., Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998).**  Therefore, any of Burton's previous write-ups that were not accompanied by some tangible job consequence – such as a suspension without pay – would not be actionable.[5]

---

[4] Neither party addresses whether Burton would have been qualified for any of the promotions which the Casino Queen failed to post or announce.  In a trial setting the parties would be expected to address the qualifications required for the positions that Burton has indicated he was interested in and whether he was actually qualified for such positions.

[5] Rather than painstakingly going through the exhibits to determine which of the 42 Employee Warning Notices were accompanied by a suspension or other tangible job consequence, the Court declines to determine with specificity which, if any, of the write-

In sum, Burton has met the requirements of a prima facie case of discrimination. The burden, therefore, shifts to the Casino Queen to articulate a legitimate nondiscriminatory reason for its adverse employment actions. Rather than articulate a legitimate nondiscriminatory reason for its failure to promote, the Casino Queen merely states that Burton "has not alleged any adverse employment actions." Doc. 137 at 11. Because the Court found, *supra*, that Burton has established an adverse employment action - failure to promote, the Casino Queen has failed to meet its burden under the *McDonnell Douglas* analysis, and summary judgment is not appropriate on Burton's failure to promote claim.

As to any actionable disciplinary write-ups, the Casino Queen claims that Burton was properly disciplined for violations of company policy. Since the Casino Queen need only produce admissible evidence that the employment decisions were not made for discriminatory reasons, the Casino Queen has successfully articulated a nondiscriminatory reason for any actionable disciplinary write-ups.

The Casino Queen having satisfied its obligation to articulate a nondiscriminatory reason for Burton's actionable disciplinary write-ups, the burden of production returns to Burton to demonstrate the pretextual nature of the proffered reason. And Burton has met that burden. As described above, Burton testified that African-American employees were held to different standards than Caucasian employees. Burton has provided probative evidence from which a rational trier of fact could infer that the

ups qualifies as an adverse employment action.

16

Casino Queen's articulated reason for any actionable disciplinary warnings were a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, **509 U.S. 502, 515 (1993)**.

Because genuine issues of material fact remain with regard to both failure to promote and disparate discipline resulting in tangible job consequences, the Court finds that summary judgment is not warranted on Burton's claim of race discrimination in violation of Title VII and § 1981.

### C. Racially Hostile Work Environment

A hostile work environment claim is, generally, harassment at the workplace, which can constitute prohibited discrimination in the terms and conditions of employment. *Cerros v. Steel Technologies, Inc.*, **288 F.3d 1040, 1045 (7th Cir. 2002).** To demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that his work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Gentry v. Exp. Packaging Co.*, **238 F.3d 842, 850 (7th Cir. 2001) (quoting** *Faragher v. City of Boca Raton*, **524 U.S. 755, 787 (1998)).** *See also Hilt-Dyson v. Chicago*, **282 F.3d 456, 462-63 (7th Cir. 2002).** The plaintiff then must show that the harassment was based on his membership in a protected class, that the conduct was severe and pervasive and that there is a basis for employer liability. *Burlington Indus., Inc. v. Ellerth*, **524 U.S. 742, 754 (1998);** *Cerros*, **288 F.3d at 1045;** *Mason v. Southern Illinois Univ. at Carbondale*, **233 F.3d 1036, 1043 (7th Cir. 2000).**

In the case at bar, to prove his claim that the Casino Queen maintained a racially hostile environment, Burton must show (1) he was subjected to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe and pervasive to alter the conditions of his environment; and (4) there is basis for employer liability. *See, e.g., Parkins v. Civil Constructors of Ill., Inc.*, **163 F.3d 1027, 1032 (7th Cir. 1998).**

Burton's claim that the Casino Queen maintained a racially hostile environment survives summary judgment. As discussed, Burton testified to specific instances in which he was subjected to racial discrimination, including disciplinary measures applied in a racially disparate manner as well as preferential treatment for Caucasian employees. He further testified to instances of discrimination based on incidents he observed and statements he heard from other employees. *See Tutman v. WBBMTV/CBS, Inc.*, **54 F.Supp.2d 817, 826 (N.D.Ill. 1999) (collecting cases) ("[I]t is permissible for a court to consider harassment of third parties in hostile work environment claims).** Even disregarding third-party allegations, it is clear that a reasonable person would have found the environment Burton described to be hostile or abusive, and that he perceived it to be so.

In sum, Burton has shown a pattern of racial animus sufficient for a rational trier of fact to find that a hostile work environment had been created. Burton's hostile work environment claim survives summary judgment.

**D.      The *Faragher-Ellerth* Affirmative Defense**

The Casino Queen asserts the *Faragher-Ellerth* affirmative defense, submitting that it had an express anti-harassment policy which set forth a clear reporting procedure and that Burton failed to reasonably avail himself of this anti-harassment policy.

The Seventh Circuit, in *McPherson v. City of Waukegan,* **379 F.3d 430 (7th Cir. 2004)**, explained, "[w]hen a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability." **379 F.3d at 439 (citing *Parkins*, 163 F.3d at 1032**).   The Court then discussed the *Faragher/Ellerth* affirmative defense "set out in the companion cases of ***Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)** and *Faragher v. City of Boca Raton,* **524 U.S. 775 (1998)**." *Id*.  In *Ellerth*, the Supreme Court stated,

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee....   The defense comprises two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise....  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment.  *Id***. (quoting 524 U.S. at 765)**.

In *Faragher,* the Supreme Court further limited the availability of the affirmative defense by stating, "the combined knowledge and inaction [by high-echelon officials] may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and

its results, quite as if they had been authorized affirmatively as the employer's policy." **524 U.S. at 789.**

The *Faragher-Ellerth* affirmative defense is not available to the Casino Queen because (1) the Casino Queen, in suspending Burton and failing to promote him, took "tangible employment" actions against him; (2) Burton has shown that high ranking officials of the Casino Queen, in particular Thomas Monaghan, were informed of the racially hostile work environment, but failed to address reports of discrimination (Doc. 111, Childress Dep. 86:20 -89:25); and (3) Burton has named numerous employees who were discriminated against by management (Burton 110-11) – or terminated (*Id*. at 156) – subsequent to reporting incidents of racial discrimination, the fear of retaliation makes the Casino Queen's anti-harassment policy ineffective in addressing racial discrimination. As such, the Casino Queen cannot meet the burden imposed by the *Faragher/Ellerth* affirmative defense.

E.      <u>Severance of Burton's claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)</u>

The Casino Queen moves to sever Burton's claims and those of any other Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b). As previously stated (Docs. 363, 495), the Court will make no decision on severance until the ultimate number of Plaintiffs and claims that remain for trial are known.

## V.      Conclusion

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Lawrence Burton (Doc. 137). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 25th day of February, 2011**

> **s/Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**