**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ERIKA RENEE RILEY-JACKSON, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 07-CV-0631-MJR ) |
| CASINO QUEEN, INC., a corporation, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**
**(Denying Doc. 144 the Casino Queen's motion for summary judgment**
**as to Tonya Jackson)**

**REAGAN, District Judge:**

**I.   Introduction**

On September 4, 2007, Tonya Jackson ("Jackson") filed suit against her former employer, Casino Queen, Inc. ("Casino Queen"). Jackson's complaint is brought pursuant to **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,** *et seq.* **("Title VII")** and **42 U.S.C. § 1981**. The action now proceeds on Plaintiffs' Fifth Amended Complaint (Doc. 325), filed September 17, 2010, in which Jackson alleges that the Casino Queen discriminated against her because of her race, African-American (Count 26), and deprived her of her "right to the enjoyment of all benefits, privileges, terms and conditions of Plaintiff's employment contract 'as is enjoyed by white citizens,' in violation of 42 U.S.C.A. § 1981(b)" (Count 83). Jackson worked for the Casino Queen as a server from June 2000 to February 2006, when her employment was terminated. Fifth Am. Comp., ¶ 110.

Now before the Court is the Casino Queen's motion for summary judgment or, in the alternative, motion to sever (Doc. 144) Jackson's response (Doc. 220), the Casino Queen's reply (Doc. 341) and Jackson's sur-reply (Doc. 352).

1

## II. Legal Standard Governing Summary Judgment Motions

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.*, **595 F.3d 679, 683 (7th Cir. 2010);** *Durable Mfg. Co. v. U.S. Department of Labor*, **578 F.3d 497, 501 (7th Cir. 2009) (citing FED. R. CIV. P. 56(c)).** *Accord Breneisen v. Motorola, Inc.*, **512 F.3d 972 (7th Cir. 2008) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986)).**

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)***. Accord Reget v. City of La Crosse*, **595 F.3d 691, 695 (7th Cir. 2010);** *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, **491 F.3d 625, 630 (7th Cir. 2007).**

When the non-moving party bears the burden of proof, she must demonstrate the existence of a genuine fact issue to defeat summary judgment. *Reget*, **595 F.3d at 695.** Stated another way, to survive summary judgment, the non-movant must provide evidence on which the jury or court could find in her favor. *See Maclin v. SBC Ameritech*, **520 F.3d 781, 786 (7th Cir. 2008).**

## III. Analysis

The Casino Queen hired Jackson to work in room service in June 2000. Approximately three months later, she began working as a server in the sports bar. The stated reason for her termination was that she was a no-call/no-show for a scheduled shift. Doc. 144-1, Jackson

Dep. 18:20-19:8.[1] Jackson's charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC"), is dated August 12, 2007. Doc. 54-1, p. 28. The charge encompassed allegations of race and sex discrimination between July 3, 2000, and January 31, 2006. *Id*. On August 27, 2007, the EEOC issued not a right to sue letter but a dismissal and notice of rights, indicating that Jackson's charge was not timely filed. Doc. 54-2, p. 11.[2]

Jackson testified that she was unfairly written up for calling in late to notify the Casino Queen that she would be unavailable for a shift. She also testified that she was written up for tardiness and suspended even though she was at her work station within the grace period. Additionally, in August and September of 2001, Jackson was suspended for failing to clock in/clock out, which resulted in short pay. Jackson testified that she witnessed numerous instances of discrimination against other African-American employees of the Casino Queen, including discrimination against Shonell McKee, Sheemka Woodard, Janelle Quarles, Tunstell Dent, Reggie Williams, Rafael Owens, Shalimar Carter, Tedra Stracker and Valerie Jackson.

According to Jackson, white employees could have three different color tones in their hair or have snow white or platinum-blonde hair without having to remove their hair coloring, but

---

[1]The Court accepts Jackson's testimony, which is undisputed, as the expressed reason for her 2006 termination. Unfortunately, the exhibit offered in support of her testimony relates to Jackson's 2003 termination and reinstatement. Doc. 220, Exhibit 4.

[2]On this issue, Jackson's memorandum in opposition is disingenuous, misleading and confused. It is disingenuous and misleading to state that Jackson filed an EEOC charge of discrimination and attach that charge as Exhibit 1, without also stating that her charge was dismissed as untimely and also attaching the dismissal document as an exhibit. As to confusion, counsel subsequently states that Jackson did *not* file a charge of discrimination with the EEOC but must piggyback onto the timely-filed claims of other Plaintiffs. Doc. 220, p. 20. Moreover, because the document evidencing the charge of discrimination is copied at an angle that cuts off the year, counsel has taken "10-4" Jackson's birth date, and confused it with the date the charge was filed. The Court expects from counsel a greater degree of forthrightness and care than is shown here.

3

she was required to remove a "burgundy, reddish color" from her hair. She stated that Rich Garner, the Casino Queen's personnel training manager and guest services manager, told her that her hair color was "unusual," which violated a Casino Queen policy regarding hair color. Garner told her that she had a week to remove the color from her hair. When she stripped the color and re-dyed her hair, the process damaged her hair. She testified that other African-American employees, Shervona and Rana, were required to change their braided hairstyles and brownish-blonde hair color.

Jackson testified that a white customer made a sexually-offensive remark to her and was removed from the boat but allowed to return the following day and comped a room. However, when a customer made a sexually-offensive remark to a white cocktail waitress, Shon, he was permanently banned from the Casino Queen.

Jackson stated that she was not offered a supervisor position and felt as if she was passed over because of racial discrimination. Jackson offers the testimony of Cheryl Childress and Betty Smith, who testified that during Tom Monaghan's administration, the number of African-Americans promoted to the ranks of upper management "dwindled" and that the Casino Queen did not live up to its agreement with the City of East St. Louis to hire 50% of residents "across the board," meaning also 50% of upper management.

In 2003, the Casino Queen fired Jackson for being tardy even though management at the Casino Queen knew that she had jury duty and she had been told that she would be excused when she brought in the paperwork. After a grievance hearing, Jackson was reinstated, but she received no backpay. Jackson testified that when she returned to work, Dominic Gramaglia, the director of the food and beverage department, said, "Guess who's back. How does it feel to get your job back?" Jackson stated that Gramaglia told another employee, Sarah Crain, "Next time, I'm going to do a home run on her." Doc. 144-1, Jackson Dep. 143:7-13. Jackson understood Gramaglia's

comment to mean that Gramaglia intended to fire her at his next opportunity.

In January 2006, Jackson went from full-time to part-time employment at the Casino Queen because she started work at another job. Kelly Carey, a manager, told Jackson that she would be scheduled after calling in to let them know when she could work. Jackson testified that on the morning of January 29, 2006, she called in to speak with Carey about her schedule. She spoke instead with Monica Bird who did not tell her that she was scheduled to work on January 29. The parties dispute whether Daniel Opp, supervisor in the Riverview Grill, made a mistake in scheduling or whether Jackson told him she could work three days during the week in question. When Jackson called back, she was informed that she was terminated for a no-call/no-show. Jackson testified that she was told to write a statement regarding the circumstances of her termination, but the typed statement that the Casino Queen produced from her employment file was completely different from her handwritten account. According to Jackson, a white employee, Mary, was a no-call/no-show, but her employment was not terminated.

The Casino Queen counters that Jackson's claims are frivolous, unreasonable and groundless. The Casino Queen contends that her claim of racial discrimination concerning her hair color is time-barred because the incident occurred in 2001. That Casino Queen also submits - and Jackson concedes - that she did not apply for a promotion. The Casino Queen asserts that Jackson was fired because of frequent violations of company policies, including tardiness, poor work performance and failure to call in or report for her scheduled work days.

    **A.**    **Title VII Claims - failure to file a timely charge of discrimination with the EEOC**

        **1.**    **§ 1981 Claims - Four year statute of limitations**

The Casino Queen submits that any claims regarding discriminatory acts that took

place more than four years prior to the initial date of the filing of those claims are barred under 42 U.S.C. § 1981. As a result, according to the Casino Queen, all of Jackson's claims for alleged discriminatory acts that occurred prior to September 4, 2003, are time-barred.

Jackson does not dispute that claims brought under § 1981 are subject to a four-year statute of limitations; however, she asserts that discriminatory acts that occurred outside the limitations period may be considered as evidence of discrimination and hostile work environment under United States Supreme Court and Seventh Circuit Court of Appeals precedent.

The statute of limitations for claims arising under an Act of Congress enacted after December 1, 1990, is four years. **28 U.S.C. § 1658(a)**. This limitations period applies to claims arising under the amendment to § 1981 contained in the Civil Rights Act of 1991. ***Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)**. Consequently, Jackson is barred from raising claims of discrimination under § 1981 for alleged adverse acts that occurred before September 4, 2003, four years before the complaint was filed. Untimely claims of discrimination - such as Jackson's claim regarding her hair color - may only be considered for background purposes. ***Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)**.

### 2. The single-filing rule

The Casino Queen asserts that it is entitled to summary judgment as a matter of law on Title VII claims because Jackson failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Jackson mistakenly argues that she did not file a charge of discrimination with the EEOC and is instead entitled to piggyback onto the timely claims of other Plaintiffs. As stated above, Jackson did file a claim which the EEOC dismissed as untimely. As a result, Jackson's opposition to

summary judgment is woefully lacking in any argument or authority that would permit her to proceed on her Title VII claims. Although the Court declines to craft the parties' arguments for them, it is facially apparent that either avenue is open to Jackson.

The dismissal and notice of rights issued by the EEOC was mailed to Jackson on August 27, 2007, and indicates that she must file suit within 90 days of receipt of the notice. Doc. 54-2, p. 11. Jackson filed suit immediately after receiving the notice - on September 4, 2007 - so her lawsuit is timely filed. Furthermore, having filed an untimely charge of discrimination with the EEOC does not necessarily bar her from piggybacking onto the timely-filed claims of other Plaintiffs. **See, e.g., Welch v. Eli Lilly & Co., WL 2461119, at \*3-4 (S.D.Ind. 2009) (citing Green v. City of Boston, 204 F.Supp.2d 239, 241 (D.Mass. 2002) (finding that "similarly situated plaintiffs, who have failed to file administrative charges, *or who have filed untimely charges*, are permitted to piggyback on a timely-filed charge that gives the EEOC and the employer fair notice of allegations of class-wide discrimination.") (emphasis added)**.

The Court has determined that Plaintiffs may piggyback onto the timely-filed EEOC charges of others as long as their claims fall within the scope and time frame established by those charges. This is the route by which Jackson proposes to proceed. Doc. 220, Memorandum in Opposition, p. 20. Plaintiffs submit that the earliest timely charge of discrimination was filed with the EEOC on June 12, 2006, so those who experienced the same or similar discriminatory conduct between August 16, 2005, and June 12, 2006 (within the 300-day period prior to the earliest timely-filed charge) may join the lawsuit. Jackson's termination in February 2006 falls within the relevant time period, and she can proceed on

her termination under the single-filing rule.

Moreover, other alleged acts of discrimination may be considered under the Supreme Court's holding in *Morgan*,

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. **Provided that an act contributing to the claim occurs within the filing period**, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. **536 U.S. at 117 (emphasis added)**.

Or, stated another way, Jackson can recover on her claims for acts occurring more than 300 days before the earliest charge was filed with EEOC, as long as the acts were part of the same hostile work environment.

In sum, Jackson can piggyback onto the timely-filed charges of other Plaintiffs, and the Casino Queen is not entitled to summary judgment on her Title VII claims on the basis of time bar.

### B. Title VII and § 1981 claims - *McDonnell Douglas* model

Under Title VII, Jackson is required to provide evidence supporting her race discrimination claims by one of two methods, either directly or indirectly. The direct method is established by putting in enough evidence (whether direct or circumstantial) to demonstrate that the Casino Queen discriminated against Jackson because of her race. *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802-05 (1973)**. "Direct" in the context of a discrimination case, "usually means admissions." *Dewitt v. Proctor Hosp.*, **517 F.3d 944, 950 (7th Cir. 2008)**. Circumstantial evidence, on the other hand, falls into three general

8

types: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other conduct or information from which an inference of discriminatory intent might be drawn; 2) that employees similarly situated to the plaintiff other than in the characteristic (here, race) on which an employer is forbidden to base a difference in treatment received systematically better treatment; and 3) evidence that the employer's reason for a difference in treatment is unworthy of belief, a mere pretext for discrimination. ***Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007) (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)).**

Jackson has provided no direct or circumstantial evidence regarding the Casino Queen's employment action, relying on statements made by Human Resources Directors, Cheryl Childress and Betty Smith, as well as the testimony of the Casino Queen's owners and directors, Charles Bidwill, Tom Rand and James Koman, which do not meet the direct evidence standard as showing an admission by the employer/decisionmaker, or as circumstantial evidence amounting to direct evidence. None of these statements was made by Jackson's supervisor, and none of these people made the decision to terminate her employment with the Casino Queen. As a result, their statements cannot be taken as admissions by a decisionmaker of discriminatory animus.

Furthermore, these individuals' statements cannot fulfill the direct evidence method circumstantially. *Even if* one concluded that these statements provide circumstantial evidence of discriminatory activity in the Casino Queen, they do not present evidence of discriminatory treatment toward Jackson specifically. The statements present

9

no evidence of derogatory racial remarks or statements of dislike for a particular race directed at Jackson by the person who made the adverse employment decision. Nor do they provide any evidence that race was a motivating factor behind Jackson's termination. Consequently, the Court looks to the indirect method to analyze her claim. Under this approach, Jackson must first establish a prima facie case of race discrimination by proving that: (1) she is a member of a protected class; (2) her job performance met the Casino Queen's legitimate expectations; (3) she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated individuals who are not members of the protected class. *See Egonmwan v. Cook County Sheriff's Dept.*, **602 F.3d 845, 850 (7th Cir. 2010) (citing** *Burks v. Wis. Dep't of Transp.*, **464 F.3d 744, 750-51 (7th Cir. 2006))**. After making this showing, if the Casino Queen counters with legitimate, nondiscriminatory reasons for its actions, Jackson would also have to show that those reasons were pretextual. *Id.* **(citing** *id.* **at 751)**.

No one disputes that Jackson is a member of a protected class. The question then is whether Jackson could convince the trier of fact that she was meeting the Casino Queen's legitimate expectations.

As the Seventh Circuit Court of Appeals explained in *Pantoja v. American NTN Bearing Mfg. Corp.*, **495 F.3d 840 (7th Cir. 2007)**, the elements set forth in *McDonnell Douglas* are "not hermetically sealed off from one another." The Court noted that it had previously held that

> [w]hen a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate

> manner ..., the second and fourth prongs of *McDonnell Douglas* merge - allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry. **495 F.3d 846 (quoting *Peele v. Country Mutual Insurance Co.*, 288 F.3d 319, 329-330 (7th Cir. 2002))**.

Jackson maintains that she need not establish that she was meeting legitimate expectations because those who evaluated her are accused of discrimination and because she need not perform to those expectations where other employees were not required to do so.

As to Jackson's claims regarding failure to timely call in, tardiness and failure to sign in and out, she has offered no evidence that the Casino Queen applied its legitimate expectations in a disparate manner. She offers nothing to show that employees outside the protected group were not also subject to write-up and suspension for the same offenses.

On the other hand, Jackson testified that she and other African-American employees were not paid extra for training other employees, but Danny Opp, a Caucasian, was paid an extra dollar an hour for training others. Doc. 144-1, Jackson Dep. 145:4-146:16. Other instances of disparate treatment to which Jackson testified, as stated above, included treating African-Americans and Caucasians differently in applying the policy on hair color, as well as the policy regarding customers who used rude or vulgar language towards staff.

Although it is a close call, the Court also finds that Jackson's testimony is sufficient to cause a reasonable trier of fact to believe that the Casino Queen applied its legitimate employment expectations in a disparate manner with regard to Jackson's 2003 termination. Jackson was admittedly late to work, had a valid reason for her tardiness, filed a grievance with her union, had a hearing and was reinstated in her job, albeit without

three days' backpay. It is clear that in terminating her when she was on, or returning from, jury duty, the Casino Queen did not follow its own rules and procedures. As her testimony (below) shows, Gramaglia was aware that Jackson had been on jury duty when he terminated her. Jackson testified that she considered her termination to be an act of racial discrimination because of Gramaglia's conduct towards her:

> Q. Can you tell me why you consider that to be an act of racial discrimination?
>
> A. Basically, because me and Dominic [Gramaglia] used to get into it a lot. And he used his authority to get back - to get back at me. And I also saw him, the day when I was clocking in, and I asked him if I was going to be terminated or not. And he told me no, as long as I had the proper paperwork, that everything was going to be okay. So he let me work those whole eight hours, thinking that everything was fine, since I brought the proper paperwork in, and he terminated me.
>
>     \*    \*    \*
>
> Q. What leads you to believe that that had anything to do with your race?
>
> A. Dominic didn't like me at all. I don't know what the reason was, but I never - I never done anything to this man. And he just - he just did not like me for - I feel like it was for my race, because everyone liked me, and I was just like outspoken to where I wouldn't really let you say things out of the way to me, or try to use your management - feel like you're better than me, because I feel like we're all human.
>
>     \*    \*    \*
>
> Q. But what does that have to do with your race?
>
> A. I believe it has a lot to do with my race, because he just - like I say, he just - he just did not like me. Anything that I would do, he would always have something to say. No matter what the situation was, when it came down to me, he always - he always had something to say. He looked down on me, and it's - I felt like I was less; I was less of a person. I was nothing or whatever - that's how he looked at me. Jackson Dep. 24:5-26:4.

Jackson then stated that she felt that Gramaglia treated other black employees in the same

way and that white employees received preferential treatment from Gramaglia. *Id*. 26:5-12.

As to Jackson's 2006 termination, both she and the Casino Queen have presented substantial evidence on this issue. Essentially, Jackson testified that Opp failed to remove her name from a previous schedule when he made up the new one. But, in a written statement, Opp said that Jackson told him that she could work three days during the week in question. A dispositive motion is a singularly inappropriate time to resolve this sort of "he said she said" dispute. ***See Russell v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001)**. In sum, Jackson has provided evidence on which the jury or court could find in her favor on this issue.

Based on the foregoing, Jackson has produced evidence sufficient to raise an inference that the Casino Queen applied its legitimate employment expectations in a disparate manner. The second and fourth prongs of *McDonnell Douglas* merge, and the Court proceeds to the remaining element of the prima facie case: whether Jackson suffered an adverse employment action.

As Jackson points out, the Casino Queen does not contend that she did not suffer an adverse employment action - and rightly so. There is no question that Jackson's 2006 termination is an adverse employment action and that it falls within applicable limitations periods. Jackson has established a prima facie case of discrimination sufficient to stave off summary judgment for the time being, and the Court proceeds to the pretext inquiry.

As to pretext, the Casino Queen states only, "For the reasons set forth *supra*,

13

Defendant has articulated a legitimate, non-discriminatory, business reasons that justify the actions it took." Because the Court did not find that the Casino Queen's position was well taken, the Court now finds that it has failed to provide a legitimate, non-discriminatory reason to justify its actions. As a result, the Casino Queen has failed to carry its burden under the *McDonnell Douglas* analysis and its motion for summary judgment on Jackson's race discrimination claim must be denied.

### C. Attorney's fees and severance

Because the Court has concluded that summary judgment is not warranted on Jackson's claims, the Casino Queen is not entitled to attorney's fees. In accord with the Court's previous orders, the issue of severance will be decided when the total number of Plaintiffs and claims remaining for trial is known.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment (Doc. 144). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 25th day of February, 2011**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**
