IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERIKA RENEE RILEY-JACKSON, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 07-CV-0631-MJR |
| CASINO QUEEN, INC., a corporation, | ) ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER
(Denying Doc. 145 the Casino Queen's motion for summary judgment
as to Mildred Lynn)

**REAGAN, District Judge:**

**I.     Introduction**

On September 4, 2007, Mildred Lynn ("Lynn") was among the 20 original plaintiffs who brought this action against her employer, Casino Queen, Inc. ("Casino Queen"). Lynn's complaint is brought pursuant to **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")** and **42 U.S.C. § 1981**, and alleges that the Casino Queen discriminated against her because of her race, African-American, during her employment at the Casino Queen, commencing June 1993 through the present time. Specifically, Lynn's complaint asserts two counts (Counts 31 and 90) against the Casino Queen: (1) discrimination in employment based upon race and racially hostile work environment, in violation of Title VII, and (2) deprivation of her right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract "as are enjoyed

1

by white citizens," in violation of § 1981. Now before the Court is the Casino Queen's summary judgment motion, filed July 2, 2010 (Doc. 145), which is fully briefed and ready for disposition.

## II.     **Factual Background**

Lynn is an African-American female who has been employed by the Casino Queen as a bartender since June 1993. She is currently employed by the Casino Queen and is a member of Union Local #74.

Lynn alleges that the Casino Queen subjected her to discrimination and a hostile work environment because of her race. Lynn testified that one of Casino Queen's managers, Dan Stumpf, always communicated with her through a Caucasian cocktail waitress or her supervisor rather than speaking directly with her. She stated that the Casino Queen would hand-pick employees to work lucrative special events, such as golf tournaments, always excluding African-American cocktail waitresses and bartenders. Lynn testified that unlike the Caucasian bartenders, she was forced to perform her job without the assistance of another bartender and with less assistance from any of the barbacks. Lynn testified to instances where she and other African-American employees were written up or disciplined for calling off or arriving late to work, while Caucasian employees were not written up or disciplined for similar violations. Lynn stated that even African-American customers were discriminated against, as they were often asked to leave if they were observed not gambling, while white customers were not subjected to this type of harassment.

Lynn further alleges that this racial discrimination has deprived her of right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract. She stated that Caucasian employees hired on the same date as she were given higher seniority. Additionally, she testified that, despite her experience and seniority, she was not asked if she wished to be considered for promotion to a management position.

Lynn was disciplined and suspended for one day without pay in May 2008 for leaving $140.00 in a cash bag at the end of her shift. Lynn contends that she made the deposit of her cash properly and did not see the extra money in her deposit bag. She identified Caucasian employees that she claims have left cash in their registers or other locations without being suspended or disciplined. Lynn grieved the suspension with her union and had a hearing upon which her suspension was affirmed. But Lynn believes that she was singled out in retaliation for filing the instant action.

The Casino Queen contends that Lynn has not been subjected to racial discrimination or a racially hostile work environment and that there was no discriminatory basis for Lynn's suspension. It submits copies of numerous Employee Warning Notices issued to Lynn for violation of various company policies during the four years prior to the filing of this suit. The Casino Queen asserts that Lynn has failed to identify any racial slur or direct comment concerning race used by either a supervisor or co-worker, or any other racially based allegation of harassment directed at her. The Casino Queen also insists, and Lynn admits, that Lynn has never made a complaint of racial discrimination to her union during her employment. On these grounds, the Casino Queen asserts that Lynn has not

3

presented evidence of discrimination or a racially hostile work environment.

### III. Legal Standard Governing Summary Judgment Motions

Under **Federal Rule of Civil Procedure 56**, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Breneisen v. Motorola, Inc.,* **512 F.3d 972 (7th Cir. 2008) (citing** *Celotex Corp. V. Catrett,* **477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold,* **481 F.3d 512, 516 (7th Cir. 2007)).** *Accord Levy v. Minnesota Life Ins. Co.,* **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this district court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co.,* **491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison,* **488 F.3d 756, 764 (7th Cir. 2007).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby,* **477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.,* **293 F.3d 989, 996 (7th Cir. 2002).** To successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.,* **278 F.3d 693, 699 (7th Cir. 2002).** A non-moving party may submit excerpts of his own deposition as "affirmative evidence to defeat summary judgment," *Williams v. Seniff,* **342 F.3d 774, 785 (7th Cir. 2003),** and a plaintiff may present an affidavit relating facts of which he has personal

4

knowledge to support a discrimination claim. *Volovsek v. Wisc. Dep't of Agriculture, Trade and Consumer Protection,* **344 F.3d 680, 690 (7th Cir. 2003).**

IV. <u>**Analysis**</u>

    A. <u>**Procedural posture and four-year statute of limitations on § 1981 claims**</u>

Lynn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 15, 2006. Accordingly, any of Lynn's claims that fall outside the 300-day period between August 19, 2005, and June 15, 2006, are time barred under Title VII.

However, acts contributing to the claim that occurred outside of the 300-day period may also be actionable under United States Supreme Court precedent in *National Railroad Passenger Corp. v. Morgan***, 536 U.S. 101 (2002)**. There, the Court held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." **536 U.S. at 117, 120-21.** As a result, Lynn may obtain relief for other time-barred acts by linking them to acts which are within the limitations period. *Selan v. Kiley***, 969 F.2d 560, 564 (7th Cir. 1992).**

In *Selan*, the Seventh Circuit explained that "[f]or purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id.* The Court discussed three viable continuing violation theories: (1) cases involving hiring or promotion practices where the employer's decision-making process took place over a period of time so that it was difficult to pinpoint the exact day the

5

"violation" occurred; (2) cases in which the employer has an express and open policy that is alleged to be discriminatory; and (3) cases in which the plaintiff charges that the employer has followed a covert practice of discrimination–this theory is sometimes referred to as a "pattern of ongoing discrimination" or "serial violation." **Id. at 564-65 (citations omitted).** Of these three continuing violation theories, the first and third theories may be applicable to this case. The Court concludes, on the record before it, that Lynn's claims of discrimination and hostile work environment may be considered under the continuing violation theory.

As to Lynn's suspension, which occurred *after* her EEOC filing, the Seventh Circuit has recognized exceptions to the 300-day window for acts which are allegedly committed in retaliation for filing the EEOC charge. In *Malhotra v. Cotter & Co.*, **885 F.2d 1305 (7th Cir. 1989),** the Seventh Circuit stated, "a separate administrative charge is not a prerequisite to a suit complaining about retaliation for filing the first charge." **885 F.2d at 1312 (superseded on other grounds by statute).** *See also McKenzie v. Illinois Dep't of Transp.*, **92 F.3d 473, 482-83 (7th Cir. 1996).** Additionally, the requirement that any post-charge claims go through a second EEOC filing procedure would not further the purpose of providing notice to the employer and an opportunity for conciliation. *See E.E.O.C. v. Custom Companies, Inc.*, **2004 WL 765891, at \*12 (citing *McDonald v. United Air Lines, Inc.*, 587 F.2d 357, 361 (7th Cir. 1979);** *Levine v. Bryant,* **700 F.Supp. 949, 957 (N.D. Ill. 1988);** *Horton v. Jackson County Bd. of Com'rs*, **343 F.3d 897, 899 (7th Cir. 2003)).** Thus, requiring Lynn to file an additional EEOC charge for acts that occurred after her original

EEOC filing would merely lead to an "increased burden for both the EEOC and the employer." *Id.* Hence, the Court finds that Lynn's May 2008 suspension – which Lynn asserts in her testimony was in retaliation for filing the present suit – is not barred because it occurred outside the 300-day window.

Lynn's claims brought pursuant to 42 U.S.C. § 1981 are subject to a four-year statute of limitations. ***Jones v. RR. Donnelley & Sons Co.*, 541 U.S. 369, 381-82 (2004); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004).** Therefore, Lynn's § 1981 claims regarding discriminatory acts that allegedly took place prior to September 4, 2003, are barred by the applicable statute of limitations.

### B. Title VII and § 1981 discrimination claims

Title VII prohibits employers from discriminating against employees with respect to the terms and conditions of employment, based on the employees' race, color, religion, sex, or national origin. **42 U.S.C. § 2000e-2(a)(1).** A Title VII plaintiff may satisfy her burden of proving intentional discrimination in two ways. First, the plaintiff may present direct evidence of the employer's discriminatory intent. Second, the plaintiff may use the indirect, burden-shifting analysis delineated in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802 (1973).**

#### 1. Direct evidence of discrimination

In the case at bar, the Casino Queen contends that Lynn presents no direct evidence of discrimination, and her claim should be examined under the *McDonnell Douglas* burden-shifting model. Lynn responds that she has presented direct evidence of

7

discrimination in the form of testimony from the Casino Queen's Human Resource Directors, owners and board of directors.

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, **420 F.3d 712, 720 (7th Cir. 2005) (citing** *Eiland v. Trinity Hosp.*, **150 F.3d 747, 750 (7th Cir. 1998))**. "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Nagle v. Village of Calumet Park*, **554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting** *Hemsworth v. Quotesmith.com, Inc.*, **476 F.3d 487, 491 (7th Cir. 2007))**. Such circumstantial evidence of intentional discrimination needs to be "sufficiently connected to the employment action, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." *Dandy v. United Parcel Service, Inc.* **388 F.3d 263, 272 (7th Cir. 2004) (citing** *Schuster v. Lucent Techs., Inc.*, **327 F.3d 569, 576 (7th Cir. 2003) and** *Cowan v. Glenbrook Sec. Servs., Inc.*, **123 F.3d 438, 444 (7th Cir. 1997))**.

For direct evidence of discrimination, Lynn cites statements made by Cheryl Childress and Betty Smith, Human Resources Directors for the Casino Queen, as well as the testimony of the Casino Queen's owners and board of directors, Charles Bidwill, Tom Rand and James Koman. These statements do not meet the direct evidence showing as an admission by the employer/decisionmaker or as circumstantial evidence amounting to direct evidence. None of those testifying was Lynn's supervisor or made an adverse employment decision regarding her. Consequently, their statements cannot be taken as admissions by a decisionmaker of discriminatory animus. Moreover, their statements cannot fulfill the direct evidence method circumstantially. Even if one concluded that these statements provide circumstantial evidence of discriminatory activity in the Casino Queen, they do not present evidence of discriminatory treatment toward Lynn specifically. The statements present no evidence of derogatory racial remarks or statements of dislike for a particular race directed at Lynn by any person who made an adverse employment decision regarding her.

### 2. The *McDonnell Douglas* burden-shifting model

Since Lynn has failed to present direct evidence of discrimination, the Court examines her § 1981 claim under the *McDonnell Douglas* burden-shifting model. Under this approach, a plaintiff first must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, Lynn must show (1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were

9

treated more favorably. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, **254 F.3d 644, 650 (7th Cir. 2001).**

Once the plaintiff has established a prima facie case, a presumption of discrimination arises, and the employer must produce a legitimate, nondiscriminatory reason for the employment action. *Traylor v. Brown*, **295 F.3d 783, 788 (7th Cir. 2002).** At this stage, the employer is not required to prove that it was actually motivated by the proffered reason. Rather, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Stockett v. Muncie Indiana Transit System*, **221 F.3d 997, 1001 (7th Cir. 2000) (quoting** *Texas Department of Community Affairs v. Burdine*, **450 U.S. 248, 257 (1981)).** If the employer satisfies this obligation, the burden of production returns to the plaintiff to demonstrate the pretextual nature of the proffered reason. *Bennett v. Roberts*, **295 F.3d 687, 694 (7th Cir. 2002).**

The first element of Lynn's prima facie case for discrimination is not in dispute. The Casino Queen admits that Lynn is a member of a protected class. Thus, only the second, third, and fourth elements of Lynn's prima facie case need be analyzed.

The second element of a prima facie case of discrimination under *McDonnell Douglas* is a showing that the plaintiff was performing her job satisfactorily. According to the Casino Queen, Lynn failed to establish that her performance met its legitimate expectations. The Casino Queen asserts that, in addition to being suspended for leaving $140.00 in a cash bag, Lynn received 10 Employee Warning Notices for violating various

10

company policies during the four years prior to her filing this suit. The Casino Queen contends that these Employee Warning Notices show that Lynn's performance was not meeting its legitimate expectations.

Lynn contends that she is not required to establish that she was meeting the Casino Queen's legitimate expectations because her claim is against the very people who evaluated her performance, and its legitimate expectations were applied in a discriminatory manner. "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner…, the second and fourth prongs of *McDonnell Douglas* merge – allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry." ***Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (citing *Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886-87 (7th Cir. 2001); *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605, 612 n. 3 (7th Cir. 2001); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997)).**

Lynn testified that African-American employees, including Kevin Brown, Ronnie Moore and Lynn herself, were disciplined for being late while Caucasian employees, Chris Wilson, Scott Ward and Melissa Whistler, were allowed to arrive late without being disciplined. Doc. 145-3, Answers and Objections to Interrogatories, p. 13. Lynn further identified Caucasian employees, Chris Wilson, Keith Benson, Richard Barnes

and Ben Snyder, as employees who had left cash in the register or at other locations without being disciplined or suspended. *See* Doc. 145-1, Lynn Dep. 55:17-57:2.

In sum, Lynn's testimony and sworn answers are sufficient to allow a reasonable jury to find that the warnings and suspensions were given in a discriminatory manner or that employees outside the protected class were not required to meet the Casino Queen's expectations. As such, the second and fourth prongs of *McDonnell Douglas* merge, allowing Lynn to move on to the remaining prong of the analysis – whether she has shown that she suffered an adverse employment action.

In *Griffin v. Potter***, 356 F.3d 824 (7th Cir. 2004),** the Seventh Circuit stated, "[a]n adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." **356 F.3d at 829 (citing** *Hilt-Dyson v. City of Chicago***, 282 F.3d 456, 465 (7th Cir. 2002))**. The Court then explained in detail that an adverse employment action "significantly alters the terms and conditions of the employee's job" and does not include such actions as harder work assignments, increased commute, altered work hours, unfair reprimands or refusal to allow a preferred vacation schedule. *Id.* **(collecting cases).**

The Casino Queen admits that suspension without pay and failure to promote are adverse employment actions. Reprimands, such as write-ups, typically do not constitute adverse employment actions unless they are accompanied by some tangible job consequence. *See e.g., Grube v. Lau Industries, Inc.,* **257 F.3d 723, 729 (7th Cir. 2001);** *Oest v. Illinois Dep't of Corr.,* **240 F.3d 605, 613 (7th Cir. 2001);** *Sweeney v. West,* **149 F.3d 550,**

**556 (7th Cir. 1998).** Therefore, any write-ups or employee warnings given to Lynn that were unaccompanied by a tangible consequence are not actionable.

Lynn also contends that the Casino Queen's retaliation against her for filing this lawsuit is an actionable adverse employment action. While the act that Lynn alleges was done in retaliation – suspension without pay for leaving money in her cash bag – has already been acknowledged as an adverse employment action, here, Lynn argues that the Casino Queen's retaliation deprived her of, or had a chilling effect on, her right to make or support a charge of discrimination.

It is true that retaliation for making or supporting a charge of discrimination may be an actionable adverse employment action, and the Court found, *supra*, that Lynn's retaliation claim was not time barred. However, unlike some of the other Plaintiffs in this action, Lynn has not asserted a retaliation claim in her complaint against the Casino Queen. Plaintiffs have amended their complaint no fewer than three times since Lynn's May 2008 suspension, so there has been no lack of opportunity and ability to make such a claim. The summary judgment stage is too late to make this claim, and the Court declines to construe the complaint to include it. Accordingly, the only adverse employment actions that have been established are the suspension without pay and failure to promote.

As to these actions, Lynn has met the requirements of a prima facie case of discrimination. The burden, therefore, shifts to the Casino Queen to articulate a legitimate nondiscriminatory reason for the adverse employment actions. The Casino Queen claims that Lynn was properly disciplined and suspended for mishandling company funds and

13

that Lynn lost her only bid for promotion due to her seniority. As stated previously, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Stockett v. Muncie Indiana Transit System*, **221 F.3d 997, 1001 (7th Cir. 2000) (quoting** *Texas Department of Community Affairs v. Burdine*, **450 U.S. 248, 257 (1981)).** Hence, the Casino Queen has articulated nondiscriminatory reasons for the adverse employment actions.

The Casino Queen having satisfied its obligation to articulate a nondiscriminatory reason for suspending Lynn without pay and not promoting her, the burden of production returns to Lynn to demonstrate the pretextual nature of the proffered reasons. In order to survive a motion for summary judgment, Lynn must "produce evidence from which a rational fact finder could infer that the company lied about its proffered reasons." *Rudin*, **420 F.3d at 726 (internal quotations and citations omitted).**

As described above, Lynn testified that Caucasian employees had left cash in their register or at other locations without being disciplined or suspended. Additionally, Lynn testified that Caucasian employees hired on the same date were given higher seniority than she (Doc. 145-2, Lynn Dep. 160:2-161:17) and that, despite her experience and seniority, she was not asked if she wished to be considered for promotion to a management position (Doc. 145-3, Lynn Ans. 14).

The fact that Lynn only applied for only a single promotion is not probative. As explained by the Supreme Court,

14

>If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices, by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Int'l Bhd. of Teamsters v. U.S.*, **431 U.S. 324, 365 (1977)**. Here, Lynn, in sworn answers, stated that the Casino Queen frequently failed to post or announce opportunities for promotion, instead choosing to "hand-pick" employees for promotion. Doc. 145-3, Lynn Ans. 14. It is a question of fact whether Lynn would have applied for a promotion had the Casino Queen posted opportunities for promotion or had she not felt that applying was futile. *See Int'l Bhd. of Teamsters*, **431 U.S. at 371 n.58 ("While the most convincing proof would be some overt act..., the District Court may find evidence of an employee's informal inquiry, expression of interest, or even unexpressed desire credible and convincing.")**.

Lynn has provided probative evidence from which a rational trier of fact could infer that the Casino Queen's articulated reasons for her suspension without pay and lack of promotion were pretexts for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, **509 U.S. 502, 515 (1993)**.

Because the Court finds that a genuine issue of material fact exists as to whether the Casino Queen suspended Lynn without pay and failed to promote her as a result of racial discrimination, in violation of Title VII and § 1981, the Court will deny summary judgment on this claim.

C. **Racially Hostile Work Environment**

A hostile work environment claim falls under the general rubric of harassment at the workplace, which can constitute prohibited discrimination in the terms and conditions of employment. ***Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002).** To demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that her work environment was both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." ***Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 755, 787 (1998)).** *See also Hilt-Dyson,* **282 F.3d at 462-63.** The plaintiff then must show that the harassment was based on her membership in a protected class, that the conduct was severe and pervasive, and that there is a basis for employer liability. ***Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998);** *Cerros***, 288 F.3d at 1045;** *Mason v. Southern Illinois Univ. at Carbondale***, 233 F.3d 1036, 1043 (7th Cir. 2000).**

In the case at bar, for Lynn to prove her claim that the Casino Queen maintained a racially hostile environment, she must show (1) she was subjected to

unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe and pervasive to alter the conditions of her environment; and (4) there is basis for employer liability. *See, e.g.*, *Parkins v. Civil Constructors of Ill., Inc.*, **163 F.3d 1027, 1032 (7th Cir. 1998).**

Lynn's claim that the Casino Queen maintained a racially hostile environment survives summary judgment. Lynn offered specific instances evidencing a hostile work environment, including testimony that (1) disciplinary measures were applied in a racially disparate manner; (2) barbacks were instructed to concentrate on assisting the bartenders on other floors, even though she was the only bartender assigned to her floor while typically two Caucasian bartenders were assigned to each of the other floors (Doc. 145-2, Lynn Dep. 108:14-111:23); and 3) Caucasian employees received preferential promotions and opportunities to work lucrative special events (*Id*. 162:8-163:18).

Lynn has also testified to instances of discrimination based on incidents she observed and statements she heard from other employees. *See Tutman v. WBBMTV/CBS, Inc.*, **54 F.Supp.2d 817, 826 (N.D.Ill. 1999) (collecting cases) ("[I]t is permissible for a court to consider harassment of third parties in hostile work environment claims).** For example, Lynn testified that white employees, such as Corina Pratt, were not confronted, written up or disciplined for arriving late, but African-American employees who arrived at the same time, such as John Barfield and LaRonn Arterbridge, would be confronted and written up. Lynn also testified that African-American customers were asked to leave the

17

Casino Queen if they were not gambling, but Caucasian customers were not subjected to this harassment. Lynn's elderly aunt was asked to leave the Casino Queen because she was not gambling. She informed security that she was waiting for Lynn's shift to end, but security would not allow Lynn's aunt to wait.

Even disregarding third-party allegations, it is clear that a reasonable person would have found the environment Lynn describes to be hostile or abusive, and that she perceived it to be so. In sum, Lynn has alleged a pattern of racial animus sufficient to show that a hostile work environment had been created.

### D. The *Faragher-Ellerth* **Affirmative Defense**

The Casino Queen asserts the *Faragher-Ellerth* affirmative defense, claiming that it had an express anti-harassment policy setting forth a clear reporting procedure and that Lynn failed to reasonably avail herself of this anti-harassment policy.

The Seventh Circuit, in *McPherson v. City of Waukegan*, **379 F.3d 430 (7th Cir. 2004)**, explained, "[w]hen a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability." **379 F.3d at 439 (citing *Parkins*, 163 F.3d at 1032)**. The Court then discussed the *Faragher/Ellerth* affirmative defense "set out in the companion cases of *Burlington Indus., Inc. v. Ellerth*, **524 U.S. 742 (1998)** and *Faragher v. City of Boca Raton*, **524 U.S. 775 (1998)**." *Id*. In *Ellerth*, the Supreme Court stated,

18

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment. *Id.* **(quoting 524 U.S. at 765)**.

In *Faragher*, the Supreme Court further limited the availability of this affirmative defense by stating, "the combined knowledge and inaction [by high-echelon officials] may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." **524 U.S. at 789.**

The *Faragher-Ellerth* affirmative defense is not available to the Casino Queen because (1) the Casino Queen, in suspending Lynn and failing to promote her, took "tangible employment" actions against her; (2) Lynn has provided evidence, through the deposition of Cheryl Childress, that General Manager Thomas Monaghan was informed of racial discrimination, hostile work environment and retaliation but took no corrective action (Doc. 111, Childress Dep. 86:20 -89:25); and (3) Lynn offers an example of other employees (Todd and Krista Porter) who were fired after reporting incidents of racial discrimination (Doc. 145-2, Lynn Dep. 126:22-129:11, 87:6-88:8). Lastly, Lynn's stated fear of retaliation makes the Casino Queen's anti-harassment policy ineffective in addressing racial

19

discrimination. As such the Casino Queen cannot meet the burden imposed by the *Faragher/Ellerth* affirmative defense.

E. **Severance of Lynn's claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)**

As previously stated, the Court will make no decision on severance until such time as the ultimate number of Plaintiffs and claims that remain for trial are known. *See* (Docs. 363, 495).

V. **Conclusion**

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Mildred Lynn (Doc. 145). Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 25th day of February, 2011**

> **s/Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**