**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ERIKA RENEE RILEY-JACKSON, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 07-CV-0631-MJR |
| CASINO QUEEN, INC., a corporation, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER
(Denying Doc. 143 Casino Queen's motion for summary judgment
as to Jimmie King)**

**REAGAN, District Judge:**

**I.    Introduction**

On July 3, 2008, Jimmie King ("King") joined this action against his former employer, Casino Queen, Inc. ("Casino Queen"). King's complaint is brought pursuant to **42 U.S.C. § 1981** and alleges that the Casino Queen discriminated against him because of his race, African-American, during his employment at the Casino Queen, from 1999 through January 6, 2006. King's complaint asserts a single count (Count 89) against the Casino Queen: that he was deprived of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract "as are enjoyed by white citizens," in violation of § 1981. Now before the Court is the Casino Queen's summary judgment motion and memorandum, filed July 2, 2010 (Doc. 143), which is fully briefed and ready for disposition.

**II.    Factual background**

1

King was employed by the Casino Queen from 1999 to January 2006. He began his employment as a dishwasher. He subsequently was employed as a food runner, a barback and a cook before becoming a sous chef in April 2002. As a sous chef, King worked under Food and Beverage Department Director Dominic Gramaglia ("Gramaglia") and Executive Chef Alex Lazella ("Lazella"), supervising kitchen employees. The stated reason for King's termination was unsatisfactory job performance. King claims that he was terminated for refusing to obey an order by Lazella to write up two of his African-American employees for violating a kitchen policy against leaving food out. King states that he believed that the employees had been wrongfully accused of the violation and that singling them out was racially motivated.

King alleges that the Casino Queen terminated his employment in violation of § 1981. He also alleges that prior to his termination, he and other African-American employees were subject to racial discrimination in the form of falsified or questionable disciplinary write-ups, as well as a hostile work environment. He alleges that Lazella would "get in the face" of African-American employees, but not Caucasians; that African-American employees were given more work than their Caucasian counterparts; that Lazella socialized with Caucasian employees, but not African-American employees; and that Lazella retaliated against African-American employees who complained to upper management. King alleges that despite a history of retaliation, he raised complaints about the treatment of African-Americans working under Lazella and Gramaglia with the Casino Queens's Human Resources Department shortly prior to his termination.

The Casino Queen contends that there was no discriminatory basis for King's termination. It claims that his termination was for unsatisfactory job performance and cites to numerous Employee Warning Notices for violation of various company policies during his

2

employment. The Casino Queen further contends that King was not subjected to racial discrimination during the term of his employment, nor was he subjected to a racially hostile work environment. It argues that King has failed to identify any racial slur or direct comment concerning race used by either a supervisor or co-worker, or any other racially based allegation of harassment directed at him. The Casino Queen also insists, and King admits, that King has never requested a grievance hearing or a Guaranteed Fair Treatment hearing at any time during his employment, though King claims he did make complaints of racial discrimination to the Casino Queen's Human Resources Department. On these grounds, the Casino Queen asserts that King has not presented evidence of discrimination or a racially-hostile work environment.

### III. Legal Standard Governing Summary Judgment Motions

Under **Federal Rule of Civil Procedure 56**, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Breneisen v. Motorola, Inc.*, **512 F.3d 972 (7th Cir. 2008) (citing** *Celotex Corp. V. Catrett***, 477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold***, 481 F.3d 512, 516 (7th Cir. 2007)).** *Accord Levy v. Minnesota Life Ins. Co.***, 517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this district court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co.*, **491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison***, 488 F.3d 756, 764 (7th Cir. 2007).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby***, 477 U.S. 242, 247 (1986);** *Salvadori v. Franklin*

*Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002)**. To successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, **278 F.3d 693, 699 (7th Cir. 2002)**. A non-moving party may submit excerpts of his own deposition as "affirmative evidence to defeat summary judgment," *Williams v. Seniff*, **342 F.3d 774, 785 (7th Cir. 2003)**, and a plaintiff may present an affidavit relating facts of which he has personal knowledge to support a discrimination claim. *Volovsek v. Wisc. Dep't of Agriculture, Trade and Consumer Protection,* **344 F.3d 680, 690 (7th Cir. 2003).**

**IV.     Analysis**

    **A.     Procedural posture and four-year statute of limitations on § 1981 claims**

The Casino Queen submits that any claims regarding discriminatory acts that took place more than four years prior to the initial date of the filing of those claims are barred under 42 U.S.C. § 1981. As a result, according to the Casino Queen, all of King's claims for alleged adverse employment actions that occurred prior to July 3, 2004 (four years prior to the filing of the third amended complaint), are barred.

King's claims brought pursuant to § 1981 are subject to a four-year statute of limitations. *Jones v. RR. Donnelley & Sons Co.*, **541 U.S. 369, 381-82 (2004);** *Dandy v. United Parcel Serv., Inc.***, 388 F.3d 263, 269 (7th Cir. 2004).** Although his claims were added in the third amended complaint, filed July 3, 2008, the Court has determined that all claims herein relate back to the original complaint. *See, e.g.,* Doc. 444. Therefore, King's §1981 claims regarding discriminatory acts that allegedly took place prior to September 4, 2003, are barred by the applicable statute of limitations.

The Casino Queen contends that to date no copies of any EEOC complaint have been attached to King's complaint or produced during discovery. In order to bring an action in federal court under Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e*, et seq.* ("Title VII"),** a plaintiff must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." **42 U.S.C. § 2000e-5(e).** However, claims brought under § 1981, unlike claims under Title VII, do not require a plaintiff to bring charges with the EEOC before filing a claim in federal court, *Fane v. Locke Reynolds, LLP,* **480 F.3d 534, 539 (7th Cir. 2007).** King has brought only a § 1981 claim. Accordingly, the Court need not determine whether King filed a timely EEOC charge but will consider only whether the Casino Queen has offered a valid basis for granting summary judgment on King's § 1981 race discrimination claim.

### B. § 1981 discrimination claim

In order to prevail, a § 1981 plaintiff must prove that the denial of the enjoyment of the benefits, privileges, terms and conditions of his employment contract was the result of intentional discrimination. The plaintiff may present direct evidence of the employer's discriminatory intent or the indirect, burden-shifting analysis delineated in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 802 (1973).**

#### 1. Direct Evidence of Discrimination

In the case at bar, the Casino Queen contends that King presents no direct evidence of discrimination, and his claim should be examined under the *McDonnell Douglas* burden-shifting model. King responds that he has presented substantial direct evidence of discrimination.

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land*

***Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005) (citing *Eiland v. Trinity Hosp*., 150 F.3d 747, 750 (7th Cir. 1998))**. "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

***Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007))**. Such circumstantial evidence of intentional discrimination needs to be "sufficiently connected to the employment action, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision." ***Dandy v. United Parcel Service, Inc*. 388 F.3d 263, 272 (7th Cir. 2004) (citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 576 (7th Cir. 2003) and *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 444 (7th Cir.1997))**.

For direct evidence of discrimination, King cites statements made by Cheryl Childress and Betty Smith, Human Resources Directors for the Casino Queen. Neither Cheryl Childress or Betty Smith was King's supervisor or made the decision to terminate King's employment with the Casino Queen. Consequently, their statements cannot be taken as admissions by a decisionmaker of discriminatory animus.

King testified that Lazella "got in the face" of African-American employees, but not Caucasians (Doc. 143-1, King Dep. 98:12-101:11); gave African-American employees more work than their Caucasian counterparts (*Id*. at 101:18-104:2); and socialized with Caucasian employees,

6

but not African-American employees (*Id.* at 92:12-93:6). Unlike Cheryl Childress or Betty Smith, Lazella was King's supervisor and did make the decision to terminate King's employment. But, although these act may show systematically better treatment of individuals outside the protected class, King has not established that they were "close in time to the adverse employment decision." As a result, they do not establish an inference of discrimination under the direct method.

### 2. The *McDonnell Douglas* burden-shifting model

Since King failed to present direct evidence of discrimination, the Court examines his § 1981 claim under the *McDonnell Douglas* burden-shifting model. Under this approach, a plaintiff first must establish a prima facie case of discrimination. To establish a prima facie case of discrimination, King must show (1) that he was a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably. **Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001).**

Once the plaintiff has established a prima facie case, a presumption of discrimination arises, and the employer must produce a legitimate, nondiscriminatory reason for the employment action. **Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002).** At this stage, the employer is not required to prove that it was actually motivated by the proffered reason. Rather, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." **Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981)).** If the employer satisfies this obligation,

7

the burden of production returns to the plaintiff to demonstrated the pretextual nature of the proffered reason. ***Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).**

The first element of King's prima facie case for discrimination is not in dispute. The Casino Queen admits that King is a member of a protected class. Thus only the second, third, and fourth elements of King's prima facie case need be analyzed.

The second element of a prima facie case of discrimination under ***McDonnell Douglas*** is a showing that the plaintiff was performing his job satisfactorily. According to the Casino Queen, King failed to establish that his performance met its legitimate expectations. It submits that King has indicated that he believes he was terminated for failing to follow his supervisor's order to write up two of his employees. The Casino Queen asserts that King received 15 Employee Warning Notices for violating various company policies during his employment, including four notices within the statute of limitation period. The Casino Queen contends that these Employee Warning Notices show that King's performance did not meet the Casino Queen's legitimate expectations.

King contends that he is not required to establish that he was meeting the Casino Queen's legitimate expectations because his claim is against the very people who evaluated his performance and the legitimate expectations were applied in a discriminatory manner. "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner..., the second and fourth prongs of McDonnell Douglas [the fourth prong being that similarly situated individuals were treated more favorably] merge-allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry." ***Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329**

***(7th Cir.2002) (citing Curry v. Menard, 270 F.3d 473, 478 (7th Cir.2001); Gordon v. United Airlines, Inc., 246 F.3d 878, 886-87 (7th Cir. 2001); Oest v. Illinois Dept. of Corr., 240 F.3d 605, 612 n. 3 (7th Cir.2001); Flores v. Preferred Tech. Group, 182 F.3d 512, 515 (7th Cir.1999); Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1180 (7th Cir.1997)).***

King claims that he was terminated for refusing to write up two of his employees for policy violations. He has failed to identify any similarly situated employee who was not written up, warned or terminated for refusing to write up his employees. Instead, King insisted that "if I was white and didn't write them up, I would have been given the slightest slap on the hand ... other people was getting away with stuff." Doc. 143-1, King Dep. 140:7-13. King testified that Lazella falsified and gave questionable Employee Warning Notices to African-American employees. *Id.* at 82:2-86:7. King also stated that of the four write-ups he received during the statute of limitation period, only one of the underlying alleged acts had either occurred or was an actual violation of company policy. *Id.* at 44:16-45:7, 53:17-54:4, 60:10-61:22.

King has also described how a similarly situated employee, Don Brown ("Brown"), was generally held to a different set of standards. Brown was a Caucasian with the same job title and supervisor as King. King contends that Brown was allowed to just walk around, while he would be made to work harder (*Id.* at 90:16-91:18), and that Brown was allowed to violate policy by having a candlelight dinner at work without reprimand (*Id.* at 119:10-12). King further testified that the Caucasian sous chefs were given personal days off work on a more favorable basis than he was (*Id.* at 104:13-106:21) and that he was given additional responsibilities that were not given to the Caucasian sous chefs (*Id.* at 107:6-109:5).

9

While King fails to identify specific instances where a Caucasian employee refused to write somebody up and was not fired, the accusation that the Employee Warning Notices King received were of dubious merit and that he was terminated for refusing to enforce the Casino Queen's employment expectations in a disparate manner go to the heart of whether the Casino Queen applied its legitimate employment expectations in a disparate manner. The Court concludes that a reasonable jury could find that the Casino applied its legitimate employment expectations in a disparate manner. As such, the second and fourth prongs of ***McDonnell Douglas*** merge, allowing King to move on to the remaining prong of the ***McDonnell Douglas*** analysis - whether he has shown that he suffered an adverse employment action.

In ***Griffin v. Potter*, 356 F.3d 824 (7th Cir. 2004),** the Seventh Circuit stated, "[a]n adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." **356 F.3d at 829 (citing *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002))**. The Court then explained in detail that an adverse employment action "significantly alters the terms and conditions of the employee's job" and does not include such actions as harder work assignments, increased commute, altered work hours, unfair reprimands or refusal to allow a preferred vacation schedule. ***Id*. (collecting cases).**

Unquestionably, termination is an adverse employment action. But King also asserts that the cursory denial of a request to transfer departments and write-ups are actionable adverse employment actions. King has failed to establish how the cursory denial of a request to transfer departments significantly alters the terms and conditions of his job. Reprimands, such as write-ups, typically do not constitute adverse employment actions unless they are accompanied by some tangible job consequence. *See e.g., Grube v. Lau Industries, Inc*., **257 F.3d 723, 729 (7th Cir.**

2001); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). As such, the only actionable adverse employment action established was the termination of King's employment.

In sum, King has met the requirements of a prima facie case of discrimination. The burden, therefore, shifts to the Casino Queen to articulate a legitimate nondiscriminatory reason for the adverse employment action. The Casino Queen claims that King was terminated as part of a progressive discipline policy due to infractions and poor performance reports on 07/31/04, 03/06/05, 11/02/05 and 06/11/06. The Casino Queen also points to King's own testimony, in which he admitted that he was terminated for refusing to follow his supervisor's order to write up two employees. As stated previously, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). Refusal to follow a supervisor's order constitutes a legitimate, nondiscriminatory reason for termination. Hence, the Casino Queen has satisfied its obligation under the analysis, and the burden of production returns to King to demonstrate the pretextual nature of the proffered reason.

King submits that his pre-termination write-ups fail to explain his termination, as the most recent one was several months prior to his termination. He contends that the timing of his termination following his complaint to the Casino Queen's Human Resources Department indicates racial discrimination and retaliation. Further, he points to his testimony that the Casino Queen overlooked policy violations by Brown, a Caucasian sous chef. Finally, King testified that the

Casino Queen was aware of racial discrimination on the part of Lazella and Gramaglia, but failed to discipline them.

King has provided probative evidence from which a rational trier of fact could infer that the Casino Queen engaged in intentional discrimination on the basis of his race, showing that the Casino Queen's articulated reasons for the discharge was a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, **509 U.S. 502, 515 (1993)**. Because the Court finds that a genuine issue of material fact exists with regard to whether the Casino Queen terminated King's employment in violation of § 1981, the Court will deny summary judgment on this claim.

### C. Racially Hostile Work Environment

The Casino Queen contends that King has failed to establish a claim for a racially hostile work environment. King responds that he has recounted numerous acts directed against him and other African-American employees that establish that he was subjected to a hostile work environment.

Claims for a hostile work environment based on race may be actionable under § 1981. ***See e.g., Dandy,* 388 F.3d at 270-72 (analyzing a hostile work environment claim under § 1981).** Plaintiffs' Fifth Amended Complaint includes 68 counts (Counts 1-56, and 124-36) that specifically assert "hostile work environment" claims brought by other Plaintiffs. But a claim of "hostile work environment" is not present in the single count brought by King (Count 89), except in the general allegations brought as to all Plaintiffs. *See* Doc. 325. Stated simply, King has not pled a hostile work environment claim. Therefore, the Court declines to consider whether King was subject to a hostile work environment.

### D. The Faragher-Ellerth Affirmative Defense

The *Faragher-Ellerth* affirmative defense is not available to the Casino Queen because the Casino Queen, in terminating King's employment, took a "tangible employment" action against him. The Seventh Circuit, in ***McPherson v. City of Waukegan,* 379 F.3d 430 (7th Cir. 2004)**, explained, "When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability." **379 F.3d at 439 (citing *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998)**). The Court then discussed the *Faragher/Ellerth* affirmative defense "set out in the companion cases of ***Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)** and *Faragher [v. City of Boca Raton,]* **524 U.S. 775 (1998)**." *Id*. In *Ellerth*, the Supreme Court stated,

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment. *Id***. (quoting 524 U.S. at 765)**.

Here, King has shown that the Lazella's harassment culminated in a tangible employment action in the form of King's termination. As such the Casino Queen cannot meet the burden imposed by the *Faragher/Ellerth* affirmative defense.

### E. Severance of King's claims pursuant to Federal Rules of Civil Procedure 21 and 42(b)

13

The Casino Queen moves to sever King's claims and those of any other Plaintiffs that survive summary judgment, pursuant to Federal Rules of Civil Procedure 21 and 42(b). Rather than rehearse in its entirety the Court's analysis of this issue, the parties are referred to the Court's Memorandum and Order denying the Casino Queen's motion to sever as to Chanel Jordan (Doc. 363), as well as its more recent order (Doc. 495). For the reasons stated therein, the Court will make no decision on severance as to King until such time as the ultimate number of Plaintiffs and claims that remain for trial are known.

V.      **Conclusion**

For the foregoing reasons, the Court **DENIES** the Casino Queen's motion for summary judgment or, in the alternative, to sever, as to Jimmie King (Doc. 143). King's action proceeds on Count 89 of Plaintiffs' Fifth Amended Complaint, racial discrimination in violation of 42 U.S.C. § 1981. Denial of the motion to sever is without prejudice.

**IT IS SO ORDERED.**

**DATED this 28th day of February, 2011**


s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**