IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIKA RENEE RILEY-JACKSON, et al., )
)
              Plaintiffs, )
)
vs. ) Case No. 07-cv-0631-MJR-PMF
)
CASINO QUEEN, INC., )
)
              Defendant. )

**MEMORANDUM AND ORDER
DENYING SUMMARY JUDGMENT MOTION
AS TO PLAINTIFF E'TWON MEADOWS (DOC. 151)**

REAGAN, District Judge:

        A.        <u>Introduction and Procedural Overview</u>

        On September 4, 2007, Plaintiffs filed a three-count employment discrimination action against Casino Queen, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended, the Illinois Human Rights Act, 775 ILCS 5/1-109, *et seq.*, and state common law (the latter claims based on this Court's pendent jurisdiction). Additional Plaintiffs joined the suit via a November 12, 2007 Second Amended Complaint. Three other amended complaints followed.

        Plaintiffs, African-American employees and former employees of the Casino Queen, allege that they were subjected to unlawful racial discrimination, harassment and a hostile work environment as a result of the Casino Queen's unlawful conduct. Plaintiffs seek an award of compensatory damages for past and future pecuniary and non-pecuniary losses, as well as punitive damages.

1

Now before the Court is Defendant Casino Queen (CQ)'s motion for summary judgment as to Plaintiff E'Twon Meadows (Doc. 151). CQ seeks summary judgment under Federal Rule of Civil Procedure 56. Plaintiff Meadows has filed a specific response in opposition (Doc. 209). Defendant CQ otherwise rests on its Master Reply (Doc. 331), and Plaintiff rests on her Master Surreply (Doc. 353).

B. <u>Analysis</u>

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009), *citing* FED. R. CIV. P. 56(c). *Accord Alabama v. North Carolina*, -- U.S. --, 130 S. Ct. 2295, 2308 (2010); *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008); *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

What the undersigned may *not* do in deciding a summary judgment motion is evaluate the weight of the evidence, judge the credibility of witnesses or

determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. *National Athletic*, **528 F.3d at 512**, *citing Doe v. R.R. Donnelley & Sons Co.*, **42 F.3d 439, 443 (7th Cir. 1994).**

A factual dispute is genuine "only if a reasonable jury could find for either party," and disputed facts must be outcome-determinative to be "material" and preclude summary judgment. *Montgomery v. American Airlines, Inc.*, **626 F.3d 382, 389 (7th Cir. 2010).** *See also Van Antwerp v. City of Peoria, Illinois*, **627 F.3d 295, 297 (7th Cir. 2010).** But, as the Seventh Circuit Court of Appeals reiterated just days ago, in assessing the record before him, the undersigned Judge bears in mind that "the party opposing the motion gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC.*, **-- F.3d --, 2011 WL 563765, *2 (7th Cir. Feb. 18, 2011).**

In the instant case, Plaintiff E'Twon Meadows claims racial discrimination in violation of Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000(e)-3, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981 (Doc. 325, pp. 94-95, 214-216 (Fifth Amended Complaint, Counts 34 and 94)). Plaintiff commenced working for CQ in 1993 as a cocktail waitress, and she continues to work in that capacity, now at the top of the seniority ladder. At all relevant times, Plaintiff Meadows was supervised by Food and Beverage Manager Kelley Carey and Food and Beverage Department Director Dominic Gramaglia. Meadows does not specify the date(s) of discrimination, but according to her EEOC complaint and deposition testimony, she generally alleges that since Gramaglia and Carey took over her department, CQ has discriminated against her and

other African American employees, favoring white employees. Plaintiff contends she was disciplined unfairly, was not offered the opportunity to become a cocktail waitress trainer or to work special events, which would have enabled her to make more money. Plaintiff also alleges that she has been subjected to pervasive racial hostility at work. Plaintiff filed a discrimination charge with the EEOC on June 15, 2006 (Doc. 209-1), and the Notice of Right to Sue was transmitted on June 4, 2007. Plaintiff Meadows was among the original plaintiffs who filed suit on September 4, 2007 (Doc. 2).

CQ maintains that summary judgment is appropriate because: (1) Plaintiff's Section 1981 claims regarding acts prior to October 3, 2004, are barred by the four year statute of limitations; (2) Plaintiff failed to file a timely charge of discrimination with the EEOC relative to her Title VII claims for discrete acts falling outside the 300 day window between August 19, 2005, and June 15, 2006; (3) Plaintiff's Title VII and Section 1981 claims fail under the *McDonnell Douglas* burden shifting model; (4) Plaintiff has filed to establish a claim for a racially hostile environment; and (5) CQ qualifies for the *Faragher-Ellerth* affirmative defense, because it has an anti-harassment policy with clear reporting procedures, which plaintiff unreasonably failed to utilize.

1. The Statute of Limitations

Plaintiff Meadows essentially concedes CQ's argument regarding the statute of limitations period, except that Plaintiff correctly points out that September 4, 2003, is the proper cutoff date for the applicable four year statute of limitations applicable to her Section 1981 claim (Count 94).

## 2. The Timeliness of the EEOC Complaint

42 U.S.C. § 2000e-5(e) dictates that an individual must initiate a discrimination claim by filing an EEOC charge within 300 days of the alleged discrimination, or those charges are time barred. ***Hall v. Bodine Electric Co.*, 276 F.3d 345, 352 (7th Cir. 2002).** CQ's two sentence long argument regarding whether there is a timely filed EEOC complaint covering Plaintiff Meadow's Title VII claim is poorly and insufficiently drafted. CQ argues only that it is entitled to summary judgment relative to any "discrete acts" outside the 300 day period. It is undisputed that Plaintiff Meadows filed an EEOC complaint and received a Notice of her right to sue prior to the initiation of this action.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that, for purposes of Section 2000e-5(e), when a hostile environment is alleged, as opposed to a discrete discriminatory act, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability. *Nat'l R.R.*, **536 U.S. at 117.** Therefore, the Court perceives that CQ is referring to acts that cannot be connected to the hostile environment claim raised in the EEOC complaint. ***See generally Jackson v. City of Chicago*, 552 F.3d 619 (7th Cir. 2009) (discrete acts involving non-promotion claims must have occurred within the 300 day period).** The Court recognizes that CQ is, as a general matter, correct. If an act has no relation to "the whole" and falls outside the 300 day time period, that act is time barred. *See Nat'l R.R.*, **536 U.S. at 118.** However, further analysis is impossible. CQ does not

make any arguments specifically related to Plaintiff's failure to promote claims, or regarding whether acts outside the 300 day period can be enveloped under the continuing violation doctrine. Therefore, the Court will not attempt to parse Plaintiff's allegations on its own.

### 3.  The *McDonnell Douglas* Analysis

> Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Lacking any direct evidence of racial animus, [a plaintiff must rely] upon the indirect method of proving discrimination established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this method, the plaintiff must first establish a prima facie case of discrimination. *Davis v. Con-Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 784 (7th Cir.2004). If the plaintiff meets this burden, the burden shifts to the employer to present a legitimate and non-discriminatory reason for the employment action. *Id.* If the employer does so, the plaintiff must show that the proffered reasons are a pretext for discrimination. *Id.*
>
> To make the prima facie showing, [a plaintiff] must show four elements: (1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment. *Id.*
>
> ***
>
> A similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects.'" [*Ajayi v. Aramark Business Services*, 336 F.3d 520, 532 (7th Cir. 2003) (quoting *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002)). To evaluate whether two employees are directly comparable, we consider all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." *Id.* "Above all, we are mindful that courts

do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Id.*

*Brummett v. Sinclair Broadcast Group, Inc.*, **414 F.3d 686, 692-693 (7th Cir. 2005).**[1]

Plaintiff contends the deposition testimony of Human Resources Directors Cheryl Childress and Betty Smith, and owners and directors Charles Bidwell, Tom Rand and James Koman, is direct evidence of discrimination. "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, **420 F.3d 712, 720 (7th Cir. 2005) (citing** *Eiland v. Trinity Hosp.*, **150 F.3d 747, 750 (7th Cir. 1998)).** "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Nagle v. Village of Calumet Park*, **554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting** *Hemsworth v. Quotesmith.com, Inc.*, **476 F.3d 487, 491 (7th Cir. 2007)).** CQ's

---

[1] Because the elements of claims and the methods of proof are essentially identical under Title VII and Section 1981, the analysis applies equally to both claims. *McGowan v. Deere & Co.*, **581 F.3d 575, 579 (7th Cir.2009).**

argument fails because Childress, Smith, Bidwell, Rand and Koman were not Plaintiff's supervisors, and there is insufficient evidence of any connection between those individuals and the alleged discrimination against Plaintiff Meadows.

Keeping in mind that facts are to be construed in the light most favorable to, inferences drawn in favor of, and all doubts resolved in favor of the nonmoving party, Plaintiff has sufficiently established a prima facie case of discrimination:

   a.   There is no dispute that Plaintiff Meadows, an African American, is a member of a protected class.

   b.   Plaintiff received 10 warnings over a six year period, which could reasonably be found *not* to be excessive or dispositive, in light of Plaintiff's long employment history and considering the nature of the reprimands. Therefore, she could be found to be legitimately meeting her employer's expectations.

   c.   Plaintiff has shown that she suffered an adverse employment action. There is evidence that white individuals without Plaintiff's seniority, such as Donna Boland, Kim Leigh, Anita Hunn andKaren Crane (Doc 151-1, pp. 91, 94, 98, 101) were handpicked for, and/or offered a higher-paying trainer position and special/extra work assignments for which Plaintiff would have applied, had the opportunities been posted or otherwise offered.

   d.   Plaintiff has sufficiently established a prima facie case of racial discrimination regarding the alleged "failure to promote," thereby shifting the burden to Defendant CQ to articulate a nondiscriminatory reason for the adverse employment action. Adhering to the position that Plaintiff has failed to allege an adverse action, CQ does not offer any nondiscriminatory rationale. Therefore, the Court's analysis ends.

#### 4. Hostile Environment

With respect to Plaintiff's hostile environment claim, Defendant CQ asserts that Plaintiff Meadows has failed to specifically identify a pattern of racial epithets or slurs, the use of racial symbols, or a pattern of racial comments or any other race-based allegation of harassment. CQ appears to only recognize a claim based on overt acts of racism, such as hurling racial slurs.

> Title VII prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...." 42 U.S.C. § 2000e-2(a)(1). In order to impose Title VII liability for a racially hostile workplace, a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability. *Mendenhall v. Mueller Streamline Co.,* 419 F.3d 686, 691 (7th Cir.2005) (citations omitted).

*Chaney v. Plainfield Healthcare Center*, **612 F.3d 908, 912 (7th Cir. 2010).**

Because CQ has not delved into the merits of a claim based on disparate conditions and privileges, the Court will offer only a cursory analysis. Plaintiff has alleged a laundry list of incidents that she witnessed, some of which happened to her, that sufficiently establish (objectively and subjectively) a pervasively hostile environment in terms of race, which served to humiliate Plaintiff and interfere with her

work performance.  *See Chaney v. Plainfield Healthcare Center*, **612 F.3d 908 (7th Cir. 2010);** *Harris v. Forklift Systems, Inc.*, **510 U.S. 17, 21 (1993).**

### 5. The *Faragher-Ellerth* Defense

When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to the so-called *Faragher-Ellerth* defense, derived from the companion cases of *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher,* 524 U.S. 775 (1998).  In *Ellerth,* the Court stated:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise .... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment.

**524 U.S. at 765.**

Insofar as Defendant CQ asserts the *Faragher-Ellerth* affirmative defense, at this juncture, material questions of fact remain regarding the applicability of such a defense to the facts of Plaintiff's case and/or whether Plaintiff did attempt to follow reporting procedures, to no avail.

C. <u>Conclusion</u>

A reasonable jury could find in favor of the nonmovant here, Plaintiff E'Twon Meadows. Therefore, the Court **DENIES** Defendant CQ's motion for summary judgment as to E'Twon Meadows (Doc. 151).

IT IS SO ORDERED.

DATED: March 1, 2011

<u>s/ *Michael J. Reagan*</u>
MICHAEL J. REAGAN
UNITED STATES DISTRICT JUDGE