IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ERIKA RENEE RILEY-JACKSON, et al., )
)
                Plaintiffs, )
)
vs. ) Case No. 07-cv-0631-MJR-PMF
)
CASINO QUEEN, INC., )
)
                Defendant. )

**MEMORANDUM AND ORDER
DENYING SUMMARY JUDGMENT MOTION
AS TO PLAINTIFF JANELLE QUARLES (DOC. 150)**

REAGAN, District Judge:

        A.        Introduction and Procedural Overview

On September 4, 2007, Plaintiffs filed a three-count employment discrimination action against Casino Queen, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended, the Illinois Human Rights Act, 775 ILCS 5/1-109, *et seq.*, and state common law (the latter claims based on this Court's pendent jurisdiction). Additional Plaintiffs joined the suit via a November 12, 2007 Second Amended Complaint. Three other amended complaints followed.

Plaintiffs, African-American employees and former employees of the Casino Queen, allege that they were subjected to unlawful racial discrimination, harassment and a hostile work environment as a result of the Casino Queen's unlawful conduct. Plaintiffs seek an award of compensatory damages for past and future pecuniary and non-pecuniary losses, as well as punitive damages.

Now before the Court is Defendant Casino Queen (CQ)'s motion for summary judgment as to Plaintiff Janelle Quarles (Doc. 150). CQ seeks summary judgment under Federal Rule of Civil Procedure 56. Plaintiff Quarles has filed a specific response in opposition (Doc. 217). Defendant CQ otherwise rests on its Master Reply (Doc. 331), and Plaintiff rests on her Master Surreply (Doc. 353).

B.   Analysis

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009), *citing* FED. R. CIV. P. 56(c). *Accord Alabama v. North Carolina*, -- U.S. --, 130 S. Ct. 2295, 2308 (2010); *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008); *Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

What the undersigned may *not* do in deciding a summary judgment motion is evaluate the weight of the evidence, judge the credibility of witnesses or

2

determine the truth of the matter.  The court's only role is to determine whether there is a genuine issue of triable fact.  *National Athletic*, **528 F.3d at 512**, *citing Doe v. R.R. Donnelley & Sons Co.*, **42 F.3d 439, 443 (7th Cir. 1994).**

A factual dispute is genuine "only if a reasonable jury could find for either party," and disputed facts must be outcome-determinative to be "material" and preclude summary judgment.  *Montgomery v. American Airlines, Inc.*, **626 F.3d 382, 389 (7th Cir. 2010).**  *See also Van Antwerp v. City of Peoria, Illinois*, **627 F.3d 295, 297 (7th Cir. 2010).**  But, as the Seventh Circuit Court of Appeals reiterated just days ago, in assessing the record before him, the undersigned Judge bears in mind that "the party opposing the motion gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC.*, **-- F.3d --, 2011 WL 563765, *2 (7th Cir. Feb. 18, 2011).**

In the instant case, Plaintiff Janelle Quarles claims she was deprived her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract, as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981 (Doc. 325, pp. 234-236 (Fifth Amended Complaint, Count 104)).  Plaintiff Quarles commenced working for CQ in 2000 as a banquet server; she was terminated on or about July 25, 2005, purportedly because her Illinois Gaming Board license had been revoked (*see* Doc. 150-1, p. 185).  The evidence in the record reflects that Quarles's gaming license was not terminated or suspended.  Plaintiff contends that her termination and the events surrounding her termination are examples of CQ's practice of disciplining and harassing African American employees, when similarly situated white employees were

not disciplined. CQ notes that there was evidence that Plaintiff was in possession of marijuana on CQ property (*see* Doc. 150-1, p. 188 Sworn Statement of Maurice Whitfield). CQ also contends that, aside from the revocation of Plaintiff's gaming license, Plaintiff had also received multiple reprimands, and immediately preceding her termination, Plaintiff had admittedly solicited charitable donations and sold raffle tickets and shirts in violation of company policy.

CQ maintains that summary judgment is appropriate because: (1) Section 1981 claims regarding acts prior to July 7, 2004, are barred by the four year statute of limitations; (2) Plaintiff's Section 1981 claim fails under the *McDonnell Douglas* burden shifting model; (3) Plaintiff has filed to establish a claim for a racially hostile environment; and (4) CQ qualifies for the *Faragher-Ellerth* affirmative defense, because it has an anti-harassment policy with clear reporting procedures, which plaintiff unreasonably failed to utilize.

### 1. The Statute of Limitations

Plaintiff Quarles correctly points out that September 4, 2003, is the proper cutoff date for the applicable four year statute of limitations applicable to her Section 1981 claim.

### 2. The *McDonnell Douglas* Analysis

> Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Lacking any direct evidence of racial animus, [a plaintiff must rely] upon the indirect method of proving discrimination established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d

4

668 (1973). Under this method, the plaintiff must first establish a prima facie case of discrimination. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir.2004). If the plaintiff meets this burden, the burden shifts to the employer to present a legitimate and non-discriminatory reason for the employment action. *Id.* If the employer does so, the plaintiff must show that the proffered reasons are a pretext for discrimination. *Id.*

> To make the prima facie showing, [a plaintiff] must show four elements: (1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment. *Id.*
>
> ***
>
> A similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects.'" [*Ajayi v. Aramark Business Services*, 336 F.3d 520, 532 (7th Cir. 2003) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002)). To evaluate whether two employees are directly comparable, we consider all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." *Id.* "Above all, we are mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Id.*

***Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692-693 (7th Cir. 2005).**[1]

Plaintiff contends the deposition testimony of Human Resources Directors Cheryl Childress and Betty Smith, and owners and directors Charles Bidwell, Tom Rand and James Koman, is direct evidence of discrimination. "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question

---

[1]  Because the elements of claims and the methods of proof are essentially identical under Title VII and Section 1981, the analysis applies equally to both types of claims. **McGowan v. Deere & Co., 581 F.3d 575, 579 (7th Cir.2009).**

without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005) (citing *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998)). "This evidence usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed, but a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence such as:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. Ill. 2009) (quoting *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). CQ's argument fails because Childress, Smith, Bidwell, Rand and Koman were not Plaintiff's supervisors, and there is insufficient evidence of any connection between those individuals and the alleged discrimination against Plaintiff Quarles.

Keeping in mind that facts are to be construed in the light most favorable to, inferences drawn in favor of, and all doubts resolved in favor of the nonmoving party, Plaintiff has sufficiently established a prima facie case of discrimination:

    a.    There is no dispute that Plaintiff Quarles, an African American, is a member of a protected class.

b. Plaintiff admittedly received multiple warnings and a suspension related to her failing to clock-in to work, and she was terminated. However, the evidence in the record reflects that she was terminated because her gaming license was revoked, when it had not been revoked. Thus, there is sufficient evidence in the record to give credence to Plaintiff's allegation that her termination was pretextual. Therefore, she could be found to be legitimately meeting her employer's expectations. This unexplained firing casts a pall over much of CQ's evidence.

c. Plaintiff has shown that she suffered an adverse employment action—she was terminated.

d. Plaintiff has stated that white CQ employees, Security Officer Darrell and Gray Heinsz, were not disciplined for similar charitable fundraising activities, and for operating a football pool. Other employees corroborated the alleged disparate treatment.

Plaintiff Quarles has sufficiently established a prima facie case of a hostile environment for purposes of Section 1981, thereby shifting the burden to CQ to articulate a nondiscriminatory reason for the adverse employment action. CQ cites Plaintiff's disciplinary record and Plaintiff's admitted fundraising activities as a nondiscriminatory reasons why Plaintiff was terminated. As previously noted, the discrepancy regarding the written reason for termination and CQ's subsequent rationale will have to be weighed by the jury. Therefore, the Court need not offer further analysis for purposes of deciding CQ's motion for summary judgment.

### 3. Hostile Environment

With respect to Plaintiff's hostile environment claim, Defendant CQ asserts that Plaintiff Quarles has failed to specifically identify a pattern of racial epithets or slurs, the use of racial symbols, or a pattern of racial comments or any other race-based allegation of harassment. CQ appears to only recognize a claim based on overt acts of racism, such as hurling racial slurs.

> Title VII prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ...." 42 U.S.C. § 2000e-2(a)(1). In order to impose Title VII liability for a racially hostile workplace, a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability. *Mendenhall v. Mueller Streamline Co.,* 419 F.3d 686, 691 (7th Cir.2005) (citations omitted).

*Chaney v. Plainfield Healthcare Center*, **612 F.3d 908, 912 (7th Cir. 2010).**

Because CQ has not delved into the merits of a claim based on disparate conditions and privileges, the Court will offer only a cursory analysis. Plaintiff has alleged a list of incidents that she witnessed, some of which happened to her, that sufficiently establish (objectively and subjectively) a pervasively hostile environment in terms of race, which served to humiliate Plaintiff and interfere with her work performance. *See Chaney v. Plainfield Healthcare Center*, **612 F.3d 908 (7th Cir. 2010);** *Harris v. Forklift Systems, Inc.,* **510 U.S. 17, 21 (1993).**

### 5. The *Faragher-Ellerth* Defense

When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to the so-called *Faragher-Ellerth* defense, derived from the companion cases of *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher,* 524 U.S. 775 (1998). In *Ellerth,* the Court stated:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise .... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment.

**524 U.S. at 765.**

Insofar as Defendant CQ asserts the *Faragher-Ellerth* affirmative defense, at this juncture, material questions of fact remain regarding the applicability of such a defense to the facts of Plaintiff's case.

### C. Conclusion

A reasonable jury could find in favor of the nonmovant here, Plaintiff Jenelle Quarles. Therefore, the Court **DENIES** Defendant CQ's motion for summary

judgment as to Jenelle Quarles (Doc. 150).

IT IS SO ORDERED.

DATED: March 2, 2011

s/ *Michael J. Reagan*  
MICHAEL J. REAGAN  
UNITED STATES DISTRICT JUDGE